## ALEXANDER LESSEPS v. HIS CREDITORS.

In a contest for the appointment of syndic, the judgment of the court, rejecting the pretensions of an applicant, is appealable.

A person who holds the notes of an insolvent is not entitled to vote for a syndic, where it appears, that, on a settlement of accounts, there would be a balance in favor of the insolvent.

The wife, in partnership of goods with her husband or her heirs, should not be allowed to vote, in the deliberations of the creditors of the husband, for syndic, unless her rights have been previously settled by a deed of partition, or judgment for separation of goods.

An agent, with authority to collect or renew a draft, on which an insolvent is bound, and who has a general authority to "do what he thinks best under the circumstances," is authorized to vote for a syndic.

Where creditors, lawfully entitled to vote, have had an opportunity to vote, a new election cannot be ordered for the purpose of letting in new voters, whose lawful claim to vote has been subsequently acquired.

APPEAL from the Fourth District Court of New Orleans. *Strawbridge*, J. G. *Le Gardeur* and *A. K. Josephs*, for *Edward Shiff*. *Benjamin* and *Micou*, for *L. Millaudon*. By the court:

SLIDELL, J. *Alexander Lesseps* instituted proceedings to obtain a respite. A meeting of creditors was ordered. They met, refused a respite, and voted for a syndic. On the 6th February, 1852, the meeting, which was kept open during several days, was closed by the notary, who stated the result to be, that the respite prayed for had been refused; that nineteen creditors, representing the sums of $81,727 84, had voted for *Edward Shiff*; that twenty-three creditors, representing the sum of $129,593 42, had voted for *Laurent Millaudon*; and that he was consequently duly elected syndic. Immediately upon the return of the proceedings before the notary being made to the court, *Shiff* filed an opposition, in which he alleged that *Millaudon's* apparent majority was created by illegal votes, to the amount of $69,300, against which he protested before the notary. The grounds of opposition were as follows:

1. The vote of *Wilhelmus Bogart*, upon two notes belonging to *Wm. W. Pugh*, a creditor of insolvent, on the ground of the total want of authority of said *Bogart* to vote on said claim, and of the insufficiency of the oath by him taken ; which notes are for the sum of $3,500 each, amounting together to the sum of $7,000.

2. And he further opposes the vote of *H. C. Story*, on behalf of his wife, *Mrs. Story* ; said vote being upon her hereditary share of the community of acquets and gains which existed between said insolvent and his late wife, the mother of said creditor, said community never having been settled, nor the rights of the heirs ascertained by a deed of partition or a judgment of court; said claim being for $12,000.

3. And he further opposes the vote of *Auguste Lesseps*, son of the said insolvent, the same being based upon his hereditary rights in the community of acquets and gains which existed between said insolvent and his wife, the mother of said creditor, the same never having been liquidated by judgment or partition, and for the reasons cited in No. two ; and also because the said *Auguste Lesseps*, even had the community been settled, is not a creditor of the insolvent; said claim being for $11,500.

4. And he further opposes the vote of the said *Alexander Lesseps*, as tutor of the minors, *Eugène Lesseps, Hersilie Lesseps* and *Angéla Lesseps*, on the ground : 1. That the same is founded upon their hereditary rights and share in the community of acquets and gains which existed between their mother and her husband, the said insolvent, and which have never been, as stated above, settled by partition or judgment, or in any legal manner. 2. That the said *Alexander Lesseps* could not appear and take any part in the deliberations of his creditors. 3. Nor was he qualified or competent to represent the interests of said minors.

5. That he opposes the vote of *Laurent Millaudon* upon a certain note of the insolvent, upon which he was endorser, on the ground that, on the 3d of February, the *bonâ fide* holder of the note, *D. Kennedy, Jr.*, had voted upon said debt, as will appear by said proceedings ; said note being for $2,800.

His prayer was, that the alleged illegal votes for *Millaudon* be rejected, and he, *Shiff*, declared the duly elected syndic, and authorized to administer the estate. *Millaudon*, and *Lesseps* in his capacity of tutor, filed an answer to this opposition, in which, after denying the alleged illegality of the votes for *Millaudon*, they pleaded that the vote of *Trotter* for *Shiff* was illegal, because he was not, at the time of voting, the owner of the notes described in his vote, nor authorized to vote upon them. Wherefore, they prayed that the vote of *Trotter* be rejected. They alleged that one *Soubie* was a creditor of the insolvent, in the sum of $40,000 ; that he attended the meeting for the purpose of voting for *Millaudon* as syndic, but he was informed by the notary that he was not authorized, in consequence of which declaration, *Soubie* retired without voting ; that he was entitled to vote, and should have been permitted to do so. They further alleged, that at the time of the vote of *Lesseps*, as tutor, the proceedings of a family meeting advising the adjudication of the property of the minors, had been handed to the clerk of the Second District Court, with a petition praying for their homologation and the adjudication to him accordingly ; but the same had not been presented to the judge. That the said proceedings have been since homologated, and the property adjudicated accordingly. Wherefore they prayed, that the opposition of *Shiff* be dismissed; but that, if the same should be sustained by rejecting the votes given in favor of *Millaudon*, then that a new meeting of the creditors be held for a choice of syndics.

LESSEPS         Upon these pleadings, a trial being had and evidence heard, the following
*v.*
HisCreditors opinion and decree were pronounced by the District Judge.

"Satisfied as I am that this court possesses the power to remand the cause
for further deliberation among the creditors, remarking that, under the suppo-
sition that the pretentions of the opposing creditors were maintained, the differ-
ence in the vote would be so exceedingly close, whilst a large amount of votes
were or would be lost by an error not within the control of the children of the
insolvent; considering the time of the year which renders it impossible to settle
the question of the syndicate (if an appeal is taken) during the present year, I
judge it so far for the interest of the creditors, that the proceedings be remanded
to the notary for the purpose of convoking a new meeting of the creditors, and
reporting the result thereof to the court.

"It is therefore adjudged and decreed, that the proceedings be remanded to
the notary, *Theo. Guyol,* for the purpose of convoking a new meeting of the
creditors of the insolvent, and that the result thereof be reported to this court."

A motion has been made to dismiss the appeal on two grounds, one of which
was afterwards abandoned, and the other is, that the judgment is not appealable,
not being final, and working no irreparable injury to the appellant.

The motion, in our opinion, cannot be maintained. The matter in controversy
was, who had been elected syndic. *Shiff* asserted that he had been duly
elected, by virtue of the proceedings had before the notary. *Millaudon,* on his
part, joined issue with *Shiff,* and also asserted that he had been lawfully elected.
The court gave a judgment, which finally rejected the claim of *Shiff* to be
recognized as syndic under the proceedings of the meeting. The court did not,
upon a fair interpretation of the opinion and decree, hold the question of the
right of *Shiff,* under the proceedings already had, open for future deliberation.
It rejected his pretensions. The decree of rejection is final. If, at the proposed
future meeting, he should receive a majority of votes, and thus be elected syn-
dic, (upon which point we are uninformed by the transcript), he would take the
office under such new proceedings, not under those already had, which he
insisted, and still insists, conferred upon him the right to the office. Was he entitled
to be recognized as syndic by virtue of the first meeting, or was he not so entitled?
That is the question which the court below decided finally against him, and it is
that final decision which he asks this court to review.

The votes given by the *Lesseps* family amount to a total of $59,500. The
counsel for the appellant have, we think, demonstrated conclusively that these
votes were illegal; that at the time of voting, whatever may have since occurred,
they had no right to vote.

With regard to the vote of *Auguste Lesseps,* to which various objections have
been raised, it is sufficient to observe, that although his vote states that he was
the holder of notes of his father, the insolvent, to the amount of $11,500, yet, on
the other hand, it appears, that he was a large debtor of his father; so that the
balance was against him; and accordingly, at an earlier stage of the meeting of
creditors, before it was found that a respite was hopeless, he stated that he was
not a creditor of the insolvent.

The balance of the above mentioned amount of $59,000 is composed of the
votes given by *Mrs. Story,* a daughter of the insolvent, and by the insolvent, as
tutor of his minor children. These votes must be considered as illegally given,
because the community right of their mother has not been previously settled by
a deed of partition, or judgment for a separation of property. The 15th section

of the statute of 1817, enacts that, "In all the deliberations which shall take place between the creditors, either for the choice of syndics, or for the sale or disposal of the property surrendered, or for any other object relative to the interest of the mass of creditors, the opinion of the majority of the said creditors, in sum or in claims, shall prevail; but, in the case of an equality in the sum or claims of the contending parties, then the number of persons shall prevail; provided, however, that the wife, in partnership of goods with her husband, or her heirs, shall not be allowed to vote in said deliberations, unless their rights should have been previous settled by a deed of partition, or a judgment for a separation of goods."

If we give *Millaudon* the benefit of *Bogart's* vote, which is disputed, and of his own vote, also disputed, and deduct the above illegal votes to the amount of $59,000, he would be left with votes to the amount of $70,093 42.

The vote for *Shiff* was $81,727 84. Conceding, for the purposes of argument, that the *Kennedy* vote may be considered as withdrawn from him, he would be left with votes to the amount of $78,927 84; in other words, a majority of the legal votes given, unless the objection made to *Trotter's* vote for $10,000 be maintained.

In our opinion, *Trotter's* vote in *Shiff's* favor, must be maintained at least to the amount of $5,000. He appeared, and voted at the meeting as the attorney of *Tilford*. Was he authorized to do so? It will be observed that his authority, as agent, is disputed, he not being the actual owner of the claims for $5,000 each, although stated as the holder on the schedule. There is in evidence a letter of his absent principal to *Trotter*, dated 7th January, 1852, in Kentucky, in which he says: "I was a good deal surprised to hear that *Lesseps'* draft was not paid, as I made sure it would be entirely paid. I had made arrangements to invest it; but as the object now is to secure it, you must do what you think best under the circumstances, although I would greatly prefer the money; at all events, if you have to renew, endeavor to get some stronger acceptor who won't let down for so small an amount. I remitted his draft, via Baltimore, for $5,000, due 15th and 18th instant, which I have advised you in former letters, and which I am extremely anxious to hear of its safe arrival."

*Trotter* was clearly the agent of *Tilford*, with authority to collect the draft, and with power even to renew. As an incident to these powers, and especially in view of the broad expression, "do what you think best under the circumstances," we think *Trotter* was authorized to vote for a syndic of the insolvent's estate, a measure conservative and administrative in its character. It will be observed that he did nothing to impair the rights of his principal, such, for example, as voting for a discharge would have been. He simply attempted to select a depositary of the debtor's property, which property was, by force of the judicial proceedings, to go out of the hands of the insolvent into the hands of some one else, as a trustee for his creditors. As to voting against the respite, as he had the power and discretion to renew, he had the power and discretion to refuse a renewal. A respite would substantially have been a renewal.

We conclude, therefore, that *Shiff* had a majority of the votes legally given; that the illegal votes for *Millaudon* must be considered not given, and consequently that *Shiff* had a right to be recognized as syndic to the exclusion of *Millaudon*, unless, under the circumstances of the case, there was a legal discretiion vested in the district judge, to disregard the action of a majority of lawful voters, and order a new meeting.

LESSEPS
*v.*
HISCREDITORS

If there had been any irregularity in the call or mode of conducting the meeting, by which creditors having a lawful right to vote had been prevented from doing so, or it could be supposed that a fair expression of their will had not been obtained, it might then be said that no lawful election had been held, and that a new one should take place. But where creditors, lawfully entitled to vote, have had an opportunity to vote, we do not perceive upon what principle of right a new election can be ordered, for the purpose of letting in new voters, whose lawful claim to vote, if any they have, has been subsequently acquired. If there be any hardship upon the heirs of *Mrs. Lesseps* in entrusting the insolvent estate to a syndic in whose nomination they had no voice, it is the result of their own *laches*, or the *laches* of those who had charge of their affairs; and not the fault of those diligent creditors who attended the meeting, and selected the person in whose integrity and capacity they had confidence, and into whose hands they desired that the assets of the insolvent should immediately go to be administered for their benefit. We question, whether in the case of an election for directors of a corporation, a new election ought to be ordered under a similar state of votes; but the case here is stronger against a new election, because in the former case the business of the corporation would be in the meanwhile under the care of the old board, whereas in the case of an insolvent estate, the creditors have no one to take care of their interests until a syndic is chosen.

The cases cited by the counsel for the appellee in support of the order of a new election, do not appear to us to sustain him. The point ruled in the case of the *Long Island Rail Road Company*, 19 Wendell, 37, was, that where votes rejected by inspectors at the election of directors, if received, would have elected a certain ticket, are adjudged to have been erroneously rejected, the only remedy is to set aside the election, the court not having the power to declare the ticket successful, for which the votes would have been cast, had they been received. It is true, that in that case the court refused to permit the four directors to hold whose names were upon both the contending tickets; but the reason given was, that the election was irregular on account of defect of notice. If the whole proceeding, said the court, is to be deemed irregular, it seems necessarily to follow, that it must be entirely vacated. The court also there said, that they could not assume the power of pronouncing duly elected, a ticket which confessedly received a minority of votes; but this is very different from saying, that they would not assume the power of declaring a ticket elected which received a majority of legal votes, although that ticket was in a minority, if all the votes, legal and illegal, were counted.

The latter power was in fact exercised by the same court, in another case, cited by the appellant. See *Ex parte Desdoity*, and others. 1. Wendell, 98.

In *Jordy* v. *Hebrard*, 17 L. R. 457, it was held that if a candidate who received a sufficient number of votes, being the lowest of the successful candidates, was ineligible, the candidate next highest after him was not entitled to a seat, and a new election must take place as to the vacant seat. The case is not analogous to the present. The votes were given to him by lawful voters, but he was ineligible. The wishes of those voters, who inadvertently voted for him, being a majority, could not justly be disregarded, and a person brought into the board by the will of a minority of the lawful voters. The will of a majority of lawful voters had, through inadvertence, not been efficiently expressed.

In conclusion, we would add, that it is important that the administration of insolvent estates should not be protracted; and, to this end, it is particularly desirable that they should be speedily withdrawn from the possession of the bankrupt, and placed in the hands of syndics. It would be a dangerous precedent to subject such estates to the delay of a second election, in order to give time for the qualification of voters, who, at the date of a meeting duly convoked, were not clothed with the necessary legal capacity.

It is therefore decreed, that the judgment of the district court be reversed; and it is further decreed, that the said *Edward Shiff* is the duly elected syndic of the creditors of the said insolvent, *Alexander Lesseps*. It is further decreed, that the cost of this appeal be paid by the insolvent's estate, and that this cause be remanded for further proceedings, and according to law.

Application for re-hearing refused.