Parsons, C. J.
The question submitted to us in this case is, whether the direction of the judge to the jury was, or was not, legal.
This corporation was created by the statute of 1805, t. 14, by which six persons named, with such others as might afterwards associate with them, and their successors and assigns, are made a body corporate for the purpose of making the turnpike road. And the statute provides that for this purpose the corporation shall have all the powers and privileges, and be subject to all the duties and penalties, contained in the statute of 1804, c. 125, defining the general powers and duties of turnpike corporations.
The expenses of making a turnpike road are certain, and frequently very great; and the money to defray them must be advanced, before any profit can be derived from the road ; w'hile the future toll to be received depends on the travel of passengers, and must be uncertain. The value of the shares will always depend on the expenses of making the road, compared with the expected profits from the toll. Although, when the incorporation is procured, the presumption is, that the toll will be an indemnity, — otherwise the undertakers would act a very unwise part, — yet, as this presumption may fail, it may be very reasonable for the corporation not to trust to the sale of the shares for a reimbursement of the expense, but, before any expense be incurred, to require an express undertaking from the corporators, that they will pay the several assessments on their shares. Where this express agreement has been made, we have decided that it may be enforced by action, there being a legal consideration for the contract. (1)
Where no express agreement has been made by the corporators to pay their assessments, it has not been determined that the cor poration can maintain an action to recover them, upon an implied assumpsit arising from their * being voluntarily [*43] members of the corporation. That point is now before us, and if this should be decided against the plaintiffs, another point is made, that the subscription signed by the defendant, upon a fair construction of it, is evidence of an express agreement with the plaintiffs tó pay the assessments.
If the plaintiffs can maintain this action, as upon an implied promise, it must be on the principle that the defendant is obliged by law to pay his assessments. For although a moral obligation is a sufficient consideration to support an action on an express prom *36 ise, there must be a legal obligation, to raise a sufficient consideration for an implied promise.
Let us now consider whether the defendant is in law bound to pay his assessments. If he is, this obligation must result from the powers of the corporation, and the due execution of those powers. The statute creating it refers, for its powers and duties, to the statute of 1804, c. 125. All the powers and duties of the plaintiffs result from this statute, or are incident to it at common law. But very clean y a corporation has not power, as incident to it at common lay, to assess for its own use a sum of money on the corporators, and compel them, by action at law, to the payment of it. To authorize this assessment, the power must be derived from the general statute. In the twelfth section, power is expressly given to choose the necessary officers, and to establish rules and regulations for the well-ordering of the affairs of the corporation.
The power to make assessments on the shares of the corporators tor the use of the corporation is not in that act expressly given; but it impliedly results from the construction of the tenth section. It is there enacted that, whenever any proprietor shall neglect or refuse to pay a tax or assessment agreed on by the corporation to their treasurer in sixty days after the time set for payment, the treasurer may sell the share of the delinquent proprietor at [ * 44 ] public auction for the payment of the tax and the * charges for sale. From this section we must conclude that the corporation have power to agree on a tax on the shares of the proprietors.
But it is a rule founded in sound reason, that when a statute gives a new power, and at the same time provides the means of executing it, those who claim the power can execute it in no other way. When we find a power in the plaintiffs to make the assessments, they can enforce the payment in the method directed by the statute, and not otherwise; and that method is by the sale of .the delinquent’s shares. This rule applies to all taxes, public and private. No action can be maintained to compel the payment of state, county, or town taxes, except in the particular cases in which an action is expressly given by the statute of 1789, c. 4. The same rule applies to taxes assessed by parishes, and also, by statute of 1785, c. 53, § 3, by the proprietors of general fields.'
It may be said that, in these cases, the warrant to collect is an execution,-and the right of action is generally unnecessary. This is granted; but the right of action, if it existed at common law, is not taken away. And the taxes assessed by proprietors of lands holden in common are not collected by any warrant of distress ; but *37 the statute remedy is a sale of the delinquent proprietor’s share, and not by an action against him to recover the assessment.
This rule of law is, in cases like the present, reasonable. Per sons not interested in having the turnpike, either from their situation or private property, may be requested to associate and become corporators. They may not be able to judge of the probable expenses or profits. But if they know, that if the assessments become grievous, they may abandon the enterprise by suffering their shares to be sold, they may on this principle join the association. And it may be observed that it must be presumed that the legislature considered the sale of the shares as an adequate remedy to recover the assessments; for it is not to be supposed that corporate powers were applied for, to subject the [ * 45 ] ad ventures to a probable loss.
As we are of opinion that the plaintiffs cannot maintain this action on an implied promise, we shall now consider whether the subscription paper, upon a fair construction, is evidence of an express promise.
The agreement there expressed is, that the subscribers will take in the said road the number of shares set against their names, and will be proprietors therein. These words certainly cannot amount, upon any reasonable construction, to a promise to pay the assessments that shall be made on their shares.
But the plaintiffs rely on the motives, expressed by the subscribers, of their taking shares and becoming proprietors. The words are, “We the subscribers, desirous of having the said turnpike road completed as soon as possible, agree,” &c. Now, perhaps no man ever associated in a turnpike corporation without some hope of profit; and if so, he must be desirous of having the road completed as soon as possible, that he may be in the reception of the supposed profits. Whether this motive to make the agreement is, or is not, expressed, it can have no effect in the construction of the contract.
We are therefore satisfied that the terms of the association do not in law amount to an agreement to pay the assessments that may be made on the shares.
In fine, our opinion is, that when the corporators expressly agree to pay the assessments, to induce the corporation to make the road, an action can be maintained on that agreement; that if there be no such agreement, the remedy for the corporation is by the sale of the delinquent’s shares, pursuant to the statute; and that, in the present case, the subscription paper is not evidence of such express agreement. The conclusion is, that the direction of the judge was right, and that the defendant have

Judgment on the verdict.

 Worcester Turnpike vs Willard, ante, vol. v. p. 80