## BANGOR BRIDGE CO. vs. McMAHON.

Where one subscribed for shares in an incorporated company, agreeing " to take " and *fill* the number of shares set against his name," the Court *held*, that *assumpsit* might be maintained against such subscriber or proprietor, to recover an assessment on his shares ; the word, "*fill*," in this connection amounting to a promise to pay assessments.

But where by the terms of the subscription, he agrees merely *to take* a certain number of shares, without promising to pay assessments, the only remedy against the delinquent proprietor is a sale of his shares.

THIS was *assumpsit*, brought to recover the amount of an assessment on a share in the *Bangor Bridge Company*, alleged to belong to the defendant. It appeared that the company had been duly organized, and that at a regular meeting, held in *Dec.* 1831, it was voted, " that the stock be divided into 300 shares, " and that a committee be appointed to solicit subscribers." The committee appointed under this vote, prepared a subscription paper in the following terms. " Three hundred shares " Bangor Bridge Corporation. — The subscribers agree to take " and fill the number of shares in the Bangor Bridge Corpora- " tion which are set against our names respectively." Which subscription paper was signed by the defendant, who also set " one share," against his name. The shares having been taken up, the company proceeded to make contracts for the building of a bridge, and, to meet the first payment under the contracts, an assessment of $25 was made on each share.

A certificate of the share according to the By-laws, together with a receipt for the amount of this assessment, were made and offered to the defendant, by the Treasurer, and payment demanded.

The case being submitted in the Court below on the foregoing statement of facts, *Perham, Justice*, ordered a nonsuit.

To which the plaintiffs took exceptions.

*J. Appleton*, for the plaintiffs, contended that the word, " fill," was equivalent to a promise to pay assessments, and cit-

ed, *Worcester Turnpike v. Willard,* 5 *Mass.* 82; and *Salem Mill Dam Corporation v. Ropes,* 6 *Pick.* 31.

*G. Parks,* for the defendant, opposed the plaintiffs' construction. The word, " fill," was not synonymous with, or equivalent to, a promise to pay. It is at best but equivocal. And corporations should be held to use explicit and unequivocal language in their subscription papers. They should not be permitted to take advantage of their own looseness, and hold subscribers to obligations, the latter never intended to lay themselves under. He also cited the following authorities. *Andover and Medford Turnpike v. Gould,* 6 *Mass.* 40; *Andover and Medford Turnpike v. Hay,* 7 *Mass.* 102; *Middlesex Turnpike v. Swan,* 10 *Mass.* 386; *Franklin Glass Co. v. White,* 14 *Mass.* 286; *Chester Glass Co. v. Dewey,* 16 *Mass.* 94.

The opinion of the Court was delivered by

WESTON J. — The general remedy for the non-payment of assessments, in corporations of this character, is by the sale of the share of the delinquent proprietor. No other remedy exists, where the agreement is to take a certain number of shares. And in the case of the *Andover and Medford Turnpike v. Gould,* 6 *Mass.* 40, it was adjudged that no greater liability attached, where the agreement was to take a certain number of shares in that corporation, and to be a proprietor therein. Unless there is some further agreement or stipulation, as has been repeatedly decided, the corporation can look only to the statute remedy. This may often prove inadequate ; and the enterprize contemplated fail for want of funds. Against such a contingency, the corporation may guard by requiring a promise not only to take the shares, but to pay the assessments, which may be lawfully made thereon. Assumpsit will lie upon such an agreement, as was decided in the case of the *Worcester Turnpike v. Willard,* 5 *Mass.* 86. This is conceded ; but it is insisted that the promise must be made in terms, which were held binding in that case, or in language equally strong. The promise must be plain and unequivocal, and if so, in whatever terms expressed, it ought to have the same legal efficacy.

In the case before us, the agreement of the subscribers

was, not merely to take the number of shares, set against their names respectively ; but they were to fill up their shares. This stipulation had some meaning, was intended to have some effect, which indeed cannot be misunderstood. To fill up, is to pay the assessments, which ascertain what proportion of the general expenditure falls upon each share. The term used requires this construction, and no other sensible meaning can be given to it.

The exceptions are sustained, the nonsuit is set aside, and a default is to be entered.