ALBANY, Oct. 1837.

In the matter of the Long Island Rail Road Co.

---

### In the matter of the election of Directors of the LONG ISLAND RAIL ROAD COMPANY.

An *incorporated company,* has not the power to create a *by-law*, subjecting to *forfeiture*, shares owned by individuals in the stock of the company, for the non-payment of instalments due upon such shares, unless the power to pass such by-law is *expressly granted* by the charter of the company.

Where the charter of an *incorporated company* declares that the *election of directors* shall be conducted in the manner prescribed in the by-laws of the company, and the by-laws fix a *time* and *place* for the election of directors, and require *notice* of the same to be given, but omit to specify the length of notice, and the mode of giving it — notice must be given for the *time* and in the *manner* prescribed by the general statute law relating to corporations.

At an election of directors, the right of an individual to vote, must be determined by the *transfer book* of the company; the inspectors cannot look beyond it.

Where votes, rejected by inspectors at an election of directors, if received, would have elected a certain ticket, are adjudged to have been erroneously rejected, the only remedy is to set aside the election; the court have not the power to declare the ticket successful, for which the votes would have been cast, had they been received.

Whether a suit at law, or in equity, will lie against an *assignee* of stock of a joint stock company, for accruing instalments, without an express promise to pay, *quere.*

THIS was a motion to *set aside* an election of directors of the Long Island Rail Road Company. The grounds of the motion, are detailed in the opinion delivered by the *chief justice.* The motion was argued by

Oct. 1837.

*W. P. Hawes & S. A. Foot,* for the objectors.

In the matter
of the Long
Island Rail
Road Co.

*Murray Hoffman & D. B. Ogden, contra.*

*By the Court,* NELSON, Ch. J. The first question present-
ed on this application is, whether the late election of directors,
is not void by reason of the non-compliance with the
*sixth section* of the act concerning corporations. 1 R. S.
603, § 6. It provides that "no by-law of the directors and
managers of any incorporated company, regulating the
election of directors or officers of such company, shall be
valid, unless the same shall have been published, for at least
two weeks in some newspaper in the county where such
election shall be held, at least thirty days before such elec-
tion." The 17th § of the charter declares, that "all future
elections of such directors, shall be conducted *in the manner
prescribed* in the by-laws of the corporation." The first
section of those laws provides, that the annual meeting of
the directors shall be held in the city of New-York on
Saturday, next preceding the first Monday of June, in each
year, and "that an election for directors shall be held at
the last named day ;" and by § 6, it is made the duty of the
secretary of the company, to give notice of the same. The
earliest publication of notice, in this case, was on the *six-
teenth of May,* for the meeting of the stockholders, on the
*fifth* of *June,* a notice of twenty days. This might be con-
sidered reasonable, and sufficient to justify the election,
were it not for the statute : if that has directly or virtually
fixed the time, a compliance is essential to render it valid,
*The King* v. *Theodorick,* 8 East. 544. Willcock on corp.
49 Angel & Ames, 278, and cannot be dispensed with by
the unanimous consent of the corporators, as it would seem.
*Supra.* It is true, that the sixth section of the revised
statutes above referred to, does not make it indispensable,
that the election of the directors should be regulated by
means of a by-law, but rather implies the contrary : and
when no such law exists, the statute publication is of course
dispensed with. The notice of the time and place of the
election, together with the requisite qualifications of voters,

would then depend upon the provisions ˙of the charter, or if that contained nothing respecting them, then, upon the common law, or usage of the company. But in this case, the charter seems to contemplate the regulation of the election by means of by-laws, as the 17th § declares that all future elections of the directors shall be conducted in the manner prescribed in these laws.

ALBANY, Oct. 1837.

In the matter of the Long Island Rail Road Co.

The only doubt that can exist, I think, is whether the appointment of the time, and place, when, and where the election shall be held, should be deemed in part *regulating* it within the intent of the sixth section. The term *regulating*, according to the best lexicographers, and which manifestly accords with the force of the word in the connection here found, means the establishment of fixed rules, and methods of proceeding for the government of the election. It is comprehensive enough to embrace all the powers possessed by the directors over this subject, and should, probably, be construed co-extensive with them. Fixing time and place, is undoubtedly among them. Indeed any regulation of the election would be imperfect, in which these did not enter into the arrangement. There is one provision of the charter, which leads to the conclusion that the notice prescribed by the sixth section, was in the mind of the legislature, in the enactment. It is the 18th §, which provides that "no stockholder shall be allowed to vote, &c. for any stock that shall have been assigned to him, at any time within *thirty days* prior to the time at which such election shall be held."

With a notice of *two weeks previous to the thirty days*, no embarrassment need arise out of the 6th section; but without it, the holders of a large portion of the stock might be disqualified, on account of transfers within the time limited : they might be unadvised of the election in season to avoid the difficulty. In this case, some 1700 shares of the stock were not represented, though the holders appear to have been qualified; and upwards of 11,000 were transferred within the thirty days. The statute providing for long notice to the stockholders, should be liberally expounded; it enables them to qualify for the election; tends to promote a

ALBANY,
Oct. 1837.

In the matter
of the Long
Island Rail
Road Co.

full assemblage, and thereby guards against contrivance, and the ill effects that may result from partial representation. Upon the foregoing view, I am inclined to think the by-law, fixing the time and place of the election, falls fairly and reasonably within the terms of the 6th section, and that the notice is to be considered as virtually regulated by statute, and of course cannot be modified, or dispensed with.

If, however, there should be any doubt upon the first ground, there is another taken against the regularity of this election, which is unanswerable. Edwin Lord, on the 5th May, 1837, was the owner of 2700 shares of the stock of the company, by an assignment from the individuals, in whose names they stood upon the books; he applied at the proper place to have the transfer entered upon the books, and asked a new certificate upon the surrender of the old ones, agreeably to the 12th and 13th by-laws of the corporation; proposing, at the same time, to pay the instalments in arrears: all of which was refused for the reason as alleged, that the stock had already been declared *forfeited* for default, in payment of the calls. For the like reason his votes were refused at the election, upon 1200 shares of the same stock of which he held regular proxies. Twenty-two dollars and fifty cents had already been paid on each of the 2700 shares, amounting, in the whole, to $60,750. If Lord had been permitted to vote upon his stock, or even upon the proxies, the result would have been changed in respect to all the candidates upon the successful ticket, except those named on both. The question then arises, whether the directors possess authority under the charter, to declare a forfeiture of stock to the company for the non-payment by the holder of the instalments called in. If they do not, the acts of the board in this respect were nugatory, and Lord is still the holder of the 2700 shares, and should have been permitted to vote; the transfer of these shares to him, which appears to have been regular, should have been entered upon the books when application was made for that purpose, agreeably to the by laws: and at all events, his votes should have been received upon the proxies.

The power of forfeiture has not been expressly conferred by the terms of the charter, but it is claimed as *implied* or *incidental*, being indispensable to carry into effect the express objects of the incorporation. The argument is, that no suit at law or in equity will lie against a subscriber after he has parted with his stock, nor against the *assignee*, unless there has been an express promise to enforce the payment of the instalments; and that no other remedy than forfeiture exists ·to enable the directors to realize the funds belonging to the institution. 6 Mass. R. 40. 11 id. 117. Angel & Ames on Corp. ch. 14, p. 292, and cases there cited. We are not aware that it has ever been decided in this state that an action cannot be maintained against the *assignee* without the aid of an express promise; and the contrary position does not seem to be without authority. 6 Har. & Johns. R. 128. 2 S. Carolina Cond. R. 215. 7 T. R. 36. There is certainly great force in the observation of Lord Kenyon, in *Huddersfield Canal Co.* v. *Buckley*, that after assignment the assignees hold the shares on the same conditions, and are subject to the same rules and orders as the original subscribers, and are to all intents and purposes substitued in the place of the original subscribers. But even were we to assume that the decision of the court would eventually be in favor of the non liability of the *assignee*, it by no means follows that the company may, for that reason, resort to an extraordinary remedy, unknown to the common law in respect to him. The argument of *necessity*, however strong and weighty it may be, can hardly be admitted as sufficient ground to induce the court to permit a corporation to take redress into its own hands, and that, too after a judicial determination that none existed in the ordinary administration of the law. The more reasonable and legal inference would seem to be, that the charter was defective; that the omission of a power in the directors to declare a forfeiture of stock left the corporate body impotent, and that an amendment became necessary to enable them to carry out the purposes of its institution.

The corporation possess the power to make by-laws *not inconsistent with any existing law*, for the management of

ALBANY, Oct. 1837.

In the matter of the Long Island Rail Road Co.

ALBANY,
Oct. 1837.

In the matter
of the Long
Island Rail
Road Co.

its property, the regulation of its affairs, and for the transfer of stock. 2 R. S. 602, § 1, sub. 6. This is the broadest general power conferred upon it; but it is not new, and would have existed as incidental. When taken as incidental it must be exercised in conformity to the general law of the land, that being the rule to regulate the proceedings of *artifical bodies*, as well as the conduct of *natural persons*, independently of express provisions of the charters of those companies to the contrary. This general law has ascertained the rights of person and of property of the citizen, and established modes of proceeding in case of a violation of them; and *corporate bodies* must conform to them, in seeking redress, the same as individuals. The former can no more take the remedy into their own hands than can the latter. So strict has this salutary principle of subjection been held in England, that even a by-law in pursuance of an express power in a charter granted by the king, is void, if contrary to the common law or act of parliament. 1 Kyd on Corp. 109. Willcock on Corp. 95. Angel & Ames, 186. 8 Co. 125, a, 127, b. 2 Inst. 47. 1 T. R. 118. Thus a by-law imposing a forfeiture of goods is void, though the letters patent authorized it; and a power granted to a corporation of dyers to search, and if they found cloth dyed with logwood, to seize it as forfeited, was adjudged void as *contrary to magna charta.* On the same principle, by-laws in restraint of trade are adjudged void. 11 Co. 53. 1 Burr. 12. 4 id. 1951. 7 Dowl. & Ryl. 601. 1 Bacon's Abr. 547. Angel & Ames, 184. Willcock, 142. So a by-law that may be lawful cannot be enforced by an extraordinary penalty, such as imprisonment or forfeiture of goods, or by distress and sale of goods, for, by the general law of the kingdom, no man is to be imprisoned, or dispossessed of his goods and chattels *nisi per legale judicium parium suorum, vel per legem terræ :* and if such penalties were allowed, corporations would be enabled to set up private particular laws in contradiction to the laws of the land, which is against the nature and essence of a by-law. *Clarke's case,* 5 Co. 64. 3 Salk. 76. Willcock, 98. 1 Bacon's Abr. 551. Even an act of parliament does not by *implication* invest the corporation

with any extraordinary authority and if it is intended to be given, it must be by *express words* to that effect. In *Kirk v. Nowill*, 1 T. R. 118, which was an action of trespass for seizing and taking a quantity of forks, the defendant justified under an act of parliament incorporating the inhabitants of the liberty of H. into a company of cutlers, and under a by-law of the company. The act authorized the adoption of such by-laws as appertained to good regulation and workmanship in the manufacturing of cutlery wares, with power to impose reasonable pains, penalties and punishment, by fine or amercement, in case of violation, and which was to be levied to the use of the corporation for the benefit of the poor. The company ordained that the searchers, (officers recognized in the act,) should search for unworkmanlike wares, and seize, carry away and destroy the same. The property was seized under and by virtue of this by-law. Lord Mansfield observed that a corporation in the definition of it, is a creature of the crown, created by letters patent; that such a corporation, with the power of making by-laws, cannot make any such law to incur a forfeiture ; that those corporations which are created by act of parliament have no other additional powers incident to them, than those have which are created by charters, *unless they be expressly given* ; and that no such extraordinary power of making by-laws to incur a forfeiture, appearing upon the plea to have been conferred, it was impossible for the court to say that the by-law in that case could be supported by the act. Buller, J., remarked, that taking it generally as a by-law creating a *forfeiture, the act of parliament not having given the* corporation the power to make such a by-law, it was bad on that ground. In all the cases where this power to declare a forfeiture of stock as expressly given by the charter, has been incidentally noticed by the courts, it has been regarded as a new and cumulative remedy to the one existing at common law. 1 Caines' Cas. in Error, 85. 1 Caines, 389, Radcliffe, J. 9 Johns. R. 218. 6 Mass. R. 40. 2 Bibb, 576. This has also been the understanding of the legislature ; for, on examination, it will be found that the power has been usually conferred by an express provision in the charters,

ALBANY,
Oct. 1837.

In the matter
of the Long
Island Rail
Road Co.

from the earliest period down to the present time. Upon the whole I am entirely satisfied the directors possessed no authority under the charter to declare a forfeiture of the stock; that their acts in this respect were wholly void, and left the rights of the stockholders in full force; and that the sales which were made, and attempted transfers of the supposed forfeited shares, passed no title to or interest in them to the purchasers.

It appears from the affidavit of the inspectors, that they have no recollection of the offer of Lord to vote upon the proxies, though the fact is distinctly stated by him; and further, that he procured them for the purpose. The fact is not very material, because it is obvious that the rejection of his votes was put upon the ground that the stock he held and proposed to vote upon, either in his own right or by proxy, had been declared forfeited. We cannot but see, if he had held proxies for the whole amount they would have been unavailable. From the broad terms of the statute, also, under which we act in this matter, 1 R. S. 603, § 5, we are bound, I think, to regard the refusal to enter the transfer of the stock upon the books according to the by-law of the company, by which Lord was wrongfully prevented from voting in his own right upon the whole 2700 shares, illegal.

The votes upon the stock standing in the name of D. Jackson were properly received. The inspectors were not to inquire beyond the transfer book, 1 R. S. 603, § 6. Any private agreement, or understanding between the individual holding the legal title to the stock in due form, and others, is a matter between themselves, with which the corporation have no concern. *Ex parte Wilcocks*, 7 Cowen, 402. Besides, no such objection was taken before the inspectors. The ground there assumed was, that the instalments were in arrear; an objection not insisted upon in the argument here.

The objection that the inspectors refused to produce the books of the company, when called for to test the qualifications of the voters, does not appear to be maintained in point of fact. We cannot avoid remarking, however, that this

should never be a matter of dispute in respect to the regularity of an election. The books should be present for the convenience of those concerned; the statute is very particular and peremptory on the point. 1 R. S. 601, § 1 ; 603, § 6.

ALBANY,
Oct. 1837.

In the matter
of the Long
Island Rail
Road Co.

Were I not inclined to the opinion that the election was irregular on account of the defect of notice, the four directors whose names were upon both tickets might be permitted to hold, and the order for a new election be confined to the remaining nine. The rejected votes upon Lord's stock would, of course, not have varied the result as to them. If the whole proceeding, however, is to be deemed irregular, it seems necessarily to follow, that it must be entirely vacated. No inconvenience can arise from this course, because, if it is the wish of both parties that those four individuals should continue in the direction, and which is understood from the observations of counsel, it will be in the power of the stockholders to re-elect them.

It seemed to be supposed by the counsel for the motion, that it would be competent for the court not only to set aside the directors irregularly elected, but also to affirm the election of the opposite ticket. This we cannot do, unless we assume the power of pronouncing duly elected a ticket which confessedly received a minority of the votes. We cannot give effect to the votes of Lord, the same as if they had been received; as injustice has been done him, we can repair it by affording him an opportunity to vote.

As the counsel have referred to me to fix the time when the new election shall take place, I shall direct that the statute publication and notice be given, which is a notice of two weeks, thirty days before the election, 1 R. S. 603, § 6 ; the election to be held the same as if it was the regular annual one; the test of qualification to be with respect to the time when it is held, and not as of the fifth of June last. This will enable all the existing stockholders to prepare and control the direction, if they choose; thus placing the power where it was intended by the charter to be, in the hands of a majority of the stockholders.