## THE FORT EDWARD and FORT MILLER PLANK ROAD COMPANY *vs.* PAYNE.

A subscription to the capital stock of any company, from a membership in which a shareholder may derive pecuniary advantage, gives to the subscriber such an interest as will support a promise to pay for the shares.

Such an enterprise is a combination of means for mutual profit, and is in no sense a gift, or a promise without consideration.

If the act of incorporation, or any public statute, declares the subscriber to the stock, or proprietor of the shares, shall pay calls made thereon; or if he agrees to do so, whether in the articles of association, or other legal instrument, he is personally liable; even although the corporation has power to forfeit his stock for non-payment.

And when a right of forfeiture is given, the remedies are either cumulative, or in the alternative, according to the terms of the statute or of the agreement.

But where a right of forfeiture is given, either by the act of incorporation or by the terms of the subscription, but no absolute duty to pay is imposed by statute, and there is no promise to pay, neither the subscriber to the stock, nor the shareholder, is personally liable to the corporation, for calls.

A subscription to the capital stock of a corporation may be upon a condition precedent; and in that case the subscriber is not liable for calls, nor can he properly be considered a shareholder, until the condition has been fulfilled.

After articles of association in a plank road company, in which the subscribers thereto promised to pay for their stock, had been drawn up and signed, P. agreed to subscribe upon the books of the company, on certain conditions.

Fort Edward and Fort Miller Plank Road Co. *v.* Payne.

Subsequently, and after the articles had been filed and the corporation was organized, and after the road had been located, as required by one of the conditions, and calls for payment of the stock had been ordered, P. subscribed, upon the books of the company and on a leaf next to that containing the articles of association, a second agreement, by which he "subscribed" for the number of shares set opposite his name; *Held,* that by so doing, he adopted the articles of association, and was bound by the promise therein contained.

APPEAL from a judgment entered upon the report of a referee. The action was brought to recover calls made upon the capital stock of the plaintiff's company. The first count of the complaint alleged that the plaintiffs were a duly incorporated plank road company under the act of the legislature of 1847, and the several acts amending the same; that five per cent on the capital stock was duly paid in; that the articles of association were duly executed and filed, &c. according to said act; that they, the subscribers to said articles, and all who should thereafter become stockholders, became a body corporate to construct and own a plank road from Fort Edward to Fort Miller, with the privilege of extending the same to Fort Miller bridge. That on the 22d January, 1850, the defendant and others executed an agreement, a copy of which was set out in the complaint, by which the defendant subscribed 25 shares at $20 a share, amounting to $500, if the company would make the terminus of their road at or near Saratoga bridge, and work and construct the three miles at the south end of the road at the same time that they made and constructed the three miles at the north end. That said agreement was delivered to the plaintiffs. That the directors of the company, at a meeting of the board on the 19th February, 1850, in pursuance of said agreement, unanimously resolved to make the terminus of the road at or near Saratoga bridge, commonly called Fort Miller bridge, and that the whole road be constructed during that year. That on the 24th April, 1850, at a meeting of the directors, of which the defendant acted as secretary, the directors entered into a contract with John Doty to build the road by the 1st of October then next, and to build the three miles at the north end as the agreement with the defendant provided. The said road was so

Fort Edward and Fort Miller Plank Road Co. v. Payne.

constructed, and the three miles at one end finished as soon as the three miles at the other end. That the directors, in pursuance of § 39 of the act, required 10 per cent of the stock to be paid on the 1st of May, June and July, 1850 ; 20 per cent on the 1st of August and September, and 30 per cent on the 1st of October, to the treasurer at his office. That they gave due notice of these calls by publishing, &c. That the defendant neglected and refused to pay his subscription, or any part of it, though often requested. That on the faith of said subscription the plaintiffs went on and constructed said road, and expended large sums of money, to wit, the amount of their capital. The plaintiffs claimed judgment for $500 with interest. The second count contained the same averments as to organization and incorporation as in first count, and the same averments as to resolutions of directors, passed 19th February, 1850, establishing the terminus of the road, and as to constructing the same. It then alleged that on the 1st of March, 1850, the defendant subscribed on the books of the company for 15 shares of stock, at $20 a share, amounting to $300. That the defendant became and was a stockholder of the company, and agreed to pay when called upon for the same, or when required to pay said $300. That the directors duly made calls pursuant to the statute, (specifying the times of payment, &c.) That they gave due notice of the payments, of the time when and place where, &c. by publication, &c. That the defendant had neglected and refused to pay said $300 or any part of it, though often requested. That on the faith of said subscription the plaintiffs had built their road and expended money, amounting to the full subscription to the stock of said company. The plaintiffs asked judgment for the said $300, and interest and costs, &c.

The answer denied the allegations in the complaint, and averred that if the plaintiffs had such an instrument in writing as was set out in the complaint, they procured the same wrongfully and without the knowledge or consent of the defendant, and without the consent of those whose names were thereto subscribed, and that the same was unavailable and could not be enforced. It averred that the defendant was not a stockholder in said company,

nor a subscriber to the books of the company, nor had he promised in any way to pay the plaintiffs any sum in any such plank road company. The reply denied generally and specifically each and every allegation of new matter contained in the answer; and averred that said agreement was duly signed by the defendant and others, as alleged in the complaint, and was duly delivered to the plaintiffs, for whose benefit the same was executed, &c.

The cause was referred to James Gibson, Esq. as sole referee, who reported the following facts as found on the hearing before him, viz: That on the 15th day of January, 1850, certain individuals subscribed articles of association, the object of which, as stated in the preamble thereto, was for the purpose of organizing a corporation to construct a plank road from the village of Fort Edward to the village of Fort Miller, in the town of Fort Edward, with the privilege of extending the same to some convenient point near the Saratoga bridge, and therein appointed directors thereof. By article 6th of that association, the subscribers agreed " to and with each other to pay to the said Fort Edward and Fort Miller Plank Road Company their respective subscriptions for said capital stock whenever called for by said directors or their successors in office." On the 19th day of January, 1850, the necessary affidavit was made by three of the directors, and on the 30th day of January thereafter the articles of association were filed with the secretary of state. The first ground of action relied upon, on the hearing, was an instrument bearing date the 22d day of January, 1850, subscribed by the defendant and various other persons, whereby it was agreed " to subscribe on the books of the Fort Edward and Fort Miller Plank Road Company for the several amounts placed opposite" their respective names, if the directors would make the *terminus* of their road at or near the Saratoga bridge, and the lower three miles " to be worked and constructed and being constructed, at the same time that the three miles next south of Fort Edward is worked and being constructed, and the first work except the Moses Kiln bridge to be expended as above described." The defendant was a subscriber to the amount of $500. The second ground of action was an instrument in writing signed by the de-

Fort Edward and Fort Miller Plank Road Co. v. Payne.

fendant, reciting that " At a meeting of the board of directors, held at the office of the company, February 19th, 1850, it was unanimously resolved, that the directors of said company adopt and establish as the terminus of their road, some convenient point at or near Saratoga bridge." And it was further resolved, " that the directors construct or cause to be constructed the whole of their road extending from Fort Edward village to the said bridge the present year." The instrument then proceeds, " now we the undersigned subscribe for the number of shares to the Fort Edward and Fort Miller Plank Road Company set opposite their respective names, upon condition that the road is extended to Fort Miller bridge, so as to make that its southern termination; and also upon the condition that the directors of the said road make and construct at least three miles of their road, measuring the distance from or near said bridge and running northerly, at the same time, or previously thereto, that the first three miles south of Fort Edward village shall be worked or constructed. March 1, 1850." Among other names subscribed to this instrument was that of the defendant; fifteen shares, amounting to $300, being set opposite to his name. That this instrument was in the same book which contained the articles of association and the signatures of the stockholders, and was on the next page of the said book succeeding the signatures of said stockholders, and formed a conditional subscription to said articles. That the plaintiff, on the 19th day of February, 1850, passed resolutions locating the road, extending it to Saratoga bridge, and making the call on the stockholders for the several installments of their shares at the times and for the amounts specified in the plaintiff's complaint. The proper notice of such calls was duly published. At a meeting of the stockholders, held April 24th, 1850, at which the defendant officiated as secretary, the road was ordered to be put under contract, and a written agreement for its construction was immediately made, in pursuance of that resolution, with one John Doty. The three miles of the plaintiff's road next south of Fort Edward village was constructed two months previous to the three miles next north of Saratoga bridge. That it would have been difficult but not impossible to have con-

Fort Edward and Fort Miller Plank Road Co. *v.* Payne.

structed the lower three miles as soon as the other. This difficulty was produced by freshets, causing high water in the Hudson river adjacent to, and along the side of which, this plank road was built. One William R. Slocum drew up the first subscription and signed it himself in $200, and procured the defendant and others to subscribe; but he lost it, and did not discover the loss till he saw the paper some time after at the office of the plaintiffs. This instrument was never delivered to the plaintiffs, nor did they accept it, or agree to perform its condition. The referee reported the following conclusions of law from said facts: That in regard to the first ground of action on the subscription drawn up by Slocum, the plaintiffs had not made out a case entitling them to recover; because it was not an agreement with the plaintiffs, but only between and among its subscribers; it was never delivered to the plaintiffs, or accepted by them; was entirely without consideration, and without mutuality. As to the second ground of action, being the subscription on the books of the company, the referee was of opinion that the subscription was conditional, and was for that reason absolutely void. That such condition was a condition precedent, and performance by the plaintiffs was absolutely essential before any right of action could be founded on it. That conceding it to be an executory contract, those conditions were not performed on the part of the plaintiffs, and therefore no right of action accrued to them in any form. That the allegations in the complaint being of an absolute engagement, and the proof showing a conditional one, there was a failure of proof by the plaintiffs of the alleged cause of action. He therefore reported in favor of the defendant; and from the judgment entered upon the report the plaintiffs appealed.

*A. D. Wait,* for the plaintiffs.

*C. F. Ingalls,* for the defendant.

*By the Court,* HAND, P. J. It is well settled that a subscription to the capital stock of any company, from the member-

ship of which a shareholder may derive pecuniary advantage, gives to the subscriber such an interest, as will support a promise to pay for the shares. Such an enterprise is a combination of means for mutual profit, and is in no sense a gift, or promise without consideration. But I think the counsel for the defendant is right in his position, that the defendant is not liable unless an express promise has been shown. The extent of the liability of a subscriber to capital stock, or of a shareholder, depends upon the charter, and his engagements. In *The Northern Railroad Company* v. *Miller*, (10 *Barb.* 260,) I decided at the circuit, in accordance with what I supposed to be the views of my brethren, in granting a new trial in the case of *The Northern Railroad Company* v. *Duane ;* with which I could not concur. In that case Justice Harris nonsuited the plaintiffs, on the ground that, subsequently to the subscription by the defendant, there had been an amendment of the charter, authorizing the company to construct " one or more branch lines of railroad to connect with one or more lines of railroad, to be constructed in Canada East ;" and he declined to pass upon the question of personal liability. It was mainly upon this point of the alteration of the charter that I dissented in Miller's case ; for that was the only defense set up in the answer of Miller ; although the other point was argued at general term. In that case the directors had power to make calls for the sums subscribed to the capital stock, under a penalty of forfeiture of the stock, and previous payments thereon, for non-payment. And so far as the personal liability of the defendant was put upon an implied promise, I believe the position cannot be sustained by authority, as I think will appear by an examination, not only of the cases decided in this state, and cited by the learned judge who delivered the opinion, but many others. In the *Union Turn. Co.* v. *Jenkins,* the promise was to pay so much for every share. (1 *Caines,* 381 ; *S. C.,* 1 *Caines' Cas. in Err.* 86.) In *The Goshen Turn. Co.* v. *Hurtin,* (9 *John.* 217,) and *The Dutchess Co. Manufactory* v. *Davis,* (14 *Id.* 238,) the contracts were express ; and were considered promissory notes within the statute. There were express promises to pay, in the *Highland Turn. Co.* v. *McKean,* (11 *Id.*

98;) *Slee* v. *Bloom*, (19 *John*. 456;) *Small* v. *Herkimer Manf. Co.*, (2 *Comst*. 330; *S. C.* 21 *Wend*. 271; 2 *Hill*, 127;) *Morris Can. and Bank. Co.* v. *Nathan*, (2 *Hall*, 239;) *Valk* v. *Crandall*; (1 *Sandf. C. R.* 179;) *Palmer* v. *Lawrence*, (3 *Sandf*. 161;) *Hamilton and Deansville Plk. Rd. Co.* v. *Rice*, (7 *Barb*. 157;) *Stanton* v. *Wilson*, (2 *Hill*, 153;) and in *Cross* v. *Jackson*, (5 *Id*. 478.) And also, as I understand them, in *Spear* v. *Crawford*, (14 *Wend*. 20;) *Harlem Canal Co.* v. *Seixas*, (2 *Hall*, 504;) *Same* v. *Spear*, (*Id*. 510.) In *Briggs* v. *Penniman*, (8 *Cowen*, 387,) the price of the shares had been fully paid. This point was not made in the *Hartford and New Haven Railroad Co.* v. *Croswell*, (5 *Hill*, 383;) and it is very probable that the contract was made and was to be executed in Connecticut.

In Massachusetts, Pennsylvania, New-Hampshire and Maine, it seems, an express promise is necessary. (*Andover and Me. Turn. Co.* v. *Gould*, 6 *Mass. R.* 40. *New Bedford, &c. Turn. Co.* v. *Adams*, 8 *Id*. 138. *Taint. &c. Turn. Co.* v. *Whiting*, 10 *Id*. 327. *Frank. Glass Co.* v. *White*, 14 *Id*. 286. *Canal Co.* v. *Sansome*, 1 *Binn*. 70. *Frank. Glass Co.* v. *Alexander*, 2 *N. Hamp. R.* 380. *Kennebec, &c. R. Co.* v. *Kendall*, 31 *Maine*, 470. And see *South Bay Meadow Dam Co.* v. *Gray*, 30 *Maine*, 547. *Ang. & Ames on Corp. ch.* 15. *Perkins' Coll. on Part.* § 1105.) In *Andover, &c. Turn. Co.* v. *Gould*, C. J. Parsons said, "Where no express agreement has been made by the corporators to pay their assessments, it has not been determined that a corporation can maintain an action to recover them upon an implied assumpsit, arising from their being voluntary members of a corporation." And he adds, "Very clearly a corporation has not power, as incident to it at common law, to assess for its own use a sum of money on the corporators, and compel them by action at law, to the payment of it." In *Canal Co.* v. *Sansome*, there was an express promise to pay for the shares; and the act of incorporation gave to the president and managers power to make calls; and it prescribed a monthly penalty for non-payment, and declared the shares forfeited, and authorized a sale of them when the penalties equalled the sum

that had before been paid. The defendant was held liable on the shares for which he had subscribed; but not on those which had been transferred to him; because as to them he had given no express promise; and the act had made no other provision except that the shares should be subject to the payments. The case of *The Troy Turn. and R. R. Co.* v. *McChesney* would seem, perhaps, to dispense with an express promise. (21 *Wend.* 296.) The statement of facts is obscure; but there was a promise to pay, subject however to the penalty of a forfeiture of the stock; and the court said it might be declared upon as an absolute promise: in other words, the forfeiture might be waived; but the cases relied upon to show that the remedies were cumulative, were upon express promises. And besides, in that case, the subscriptions were originally for a railroad; and before the defendant subscribed, the plan of a turnpike was substituted, and the subscribers were allowed to withdraw one half of their subscriptions, upon their assuming to pay the residue as calls should be made; and the jury found that he was "fully informed of all the circumstances of the transaction in reference to the road."

The English acts of incorporation abound with provisions enabling corporations to bring suits for calls, against those who sign the "subscribers' agreement," &c.; and those who subscribe to the capital stock, and proprietors of the shares. As early as 1794, an act of incorporation contained very specific provisions on this subject. (*Huddersfield Canal Co.* v. *Buckley*, 7 *T. R.* 36.) And the necessity of such legislation seems there to have been taken for granted, during all their severe legislation upon the subject for the last thirty or forty years. (*See Kent Canal Co.* v. *Robinson*, 5 *Taunt.* 801. *London and Brighton R. Co.* v. *Wilson, and Same* v. *Fairclough*, 6 *Bing. N. C.* 135. *Ingles* v. *Great N. R. Co.*, 16 *Eng. L. and Eq. R.* 55. *London Grand Junction R. Co.* v. *Freeman*, 2 *M. & G.* 536. *Southampton Dock Co.* v. *Richards, Id.* 448. *Railway Co. v. Coombe*, 3 *Exch. R.* 565. *Birmingham R. Co.* v. *Locke*, 1 *Q. B. Rep.* 256. *Lond. R. Co.* v. *Graham, Id.* 271. *Cheltenham R. Co.* v. *Daniel*, 2 *Id.* 281. *Great N. of Eng. R. Co.* v. *Biddulph*, 7 *M. & W.* 243. *Railway Co.* v. *Mowatt*, 15 *Q. B.*

521.  *Humble* v. *Langston,* 7 *M. & W.* 517.  *And see Companies' Consolidation Act,* 8 *Vict. ch.* 16, 1845.)

The right of a creditor of a corporation may be a very different matter.  The liability of the corporators was extended for his benefit at a very early day.  (*Salmon* v. *Hamburgh Co., Ch. Ca.* 206 ; *S. C.,* 6 *Fin.* 311.  2 *Vern.* 396.  *And see Briggs* ·v. *Penniman,* 8 *Cowen,* 387.  *Ang. & Ames on Corp. ch.* 17, 3*d ed. and the cases there cited.*)  It has been said the capital stock, paid and unpaid, is a fund for the payment of debts. And perhaps the stockholders are bound to see that the whole stock subscribed is applied to the payment of the debts of the corporation.  (*Id.  And see* 2 *Story's Eq.* § 1252 ; *Mann* v. *Pentz,* 3 *Comst.* 422 ;  *Gillet* v. *Moody, Id.* 479 ;  *Nathan* v. *Whitlock,* 9 *Paige,* 152.)  However this may be, in many cases the stockholders have been made personally liable for debts, by express statute.  This was so in *Mann* v. *Pentz,* (2 *Sandf. C. R.* 276 ;  *S. C.,* 3 *Comst.* 415 ;)  *Mann* v. *Currie,* (2 *Barb.* 294 ;)  *Spear* v. *Crawford,* (*supra ;*)  *Sagory* v. *Dubois,* (3 *Sand. C. R.* 466 ;)  *Bank of Poughkeepsie* v. *Ibbotson,* (24 *Wend.* 473 ;)  and *Slee* v. *Bloom,* (*supra ;*)  and in many other cases.  (*And see* 1 *R. S.* 600, § 5.)

The case of *The Hartford and New-Haven Railroad Co.* v. *Kennedy,* (12 *Conn.* 500,) is relied upon as sustaining the action upon an implied promise, from the relation of stockholder and company.  In that case the statute empowered the directors to require payment at such times, in such proportions, and on such conditions, as they saw fit ; and the shares of a delinquent stockholder could be sold, and the avails applied in payment for the stock ; and the surplus, if any, was to be paid to the stockholder.  The terms of the subscription, too, were pretty broad. But Jewett, C. J., in giving his opinion in the court of appeals, in *Small* v. *Herkimer Manf. Co.,* (2 *Comst.* 343,) after stating ·that it was well settled that an action will lie against a delinquent subscriber on an express promise, said, in relation to that case, the " court went a step further."  And he was undoubtedly correct ; and however much we may respect the court that made the decision, and the very able judge who delivered the opinion

Fort Miller and Fort Edward Plank Road Co. v. Payne.

in that case, we are not authorized to disregard what had before been considered well established law in this state.

Although the act of incorporation be silent on the subject, the corporators, as among themselves, may contract in relation to their liability for the price of stock, provided such agreement be not repugnant to the act of incorporation, and not dishonest, or against public policy. As remarked by Gardiner, J., in *Small* v. *Herkimer Manf. Co.*, the subscription must be construed as if all the provisions of the statute affecting the liability of the subscriber, or his title to the stock, were incorporated in the agreement.

I think the principle to be deduced from the decisions is, that, if the act of incorporation, or any public statute, declares the subscriber to the stock, or proprietor of the shares, shall pay calls made thereupon; or if he agree to do so, whether in the articles of association, or other legal instrument, he is person-ally liable; even although the corporation has power to forfeit his stock for non-payment. And when a right of forfeiture is given, the remedies are either cumulative or in the alternative, according to the terms of the statute or of the agreement. But where there is a right of forfeiture given, either by the act of incorporation or by the terms of the subscription, but no abso-lute duty to pay is imposed by statute, and there is no promise to pay, neither the subscriber to the stock, nor the shareholder, is personally liable to the corporation for calls. The rule is generally different as to creditors.

And it seems to me this is so, upon principle, independent of authority. The parties to the constitution of the company agree upon the terms of membership; and they have a perfect right to do so, as among themselves. It has been said that an agree-ment *to take is, ex vi termini, an agreement to pay for.* I do not so understand the meaning of the expression, nor see the force of the argument, when used in reference to a subscription for stock. In the case we have supposed, the agreement, in ex-press terms is, that the party subscribes for the stock, and if he does not pay for it, he will forfeit it. There is no antece-dent debt or duty, nor recognition or creation of any, at the time.

Without such debt or duty, or an express promise, a mortgage creates no personal liability. (*Culver* v. *Sisson*, 3 *Comst.* 204.) As between themselves, their obligations are reciprocal; and no one can be compelled to proceed with the undertaking. It follows, that as the plank road law imposes no personal obligation to pay for the stock, unless the defendant has agreed to do so, the plaintiffs cannot recover.

But has not the defendant agreed to pay, in this case? By the first contract declared upon, the defendant agrees "to subscribe" the amount of $500, on condition, &c. And by the second, he and those signing with him, "*subscribed*" for the number of shares set opposite their names, upon condition, &c. Taken alone, these, obviously, contain no promise to pay. But the 6th article of association is as follows: "Article 6. For the purposes contemplated by these articles, the undersigned have severally subscribed for the number of shares of the capital stock of this asssociation, placed opposite their respective signatures hereto; and they severally agree to and with each other to pay to the said Fort Edward and Fort Miller Plank Road Company, their respective subscriptions for said capital stock, whenever called for by said directors, or their successors in office." The defendant did not then subscribe to these articles; both contracts signed by him being given afterwards; one before, the other after, the articles were filed with the secretary of state. Although the agreement is "to and with each other," yet it is to pay to the corporation. The act of incorporation generally includes those who sign the preliminary subscription, subscribers' agreement, parliamentary agreement, &c. And one may become a member of a company in various ways. (*See Hamilton and Deansville Plank R. Co.* v. *Rice*, 7 *Barb.* 157; *Stanton* v. *Wilson*, 2 *Hill*, 153; *Spear* v. *Crawford*, *supra*; *Chester Glass Co.* v. *Dewey*, 16 *Mass.* 94; *Midland R. Co.* v. *Gordon*, 16 *M. & W.* 804; *Waterford, &c. R. Co.* v. *Pidcock*, 8 *Exch. R.* 279; *Thorp* v. *Woodhull*, 1 *Sandf. C. R.* 411; *Clements* v. *Todd*, 1 *Exch. R.* 501; *Carrick's case*, 1 *Sim. N. S.* 505; *W. Cornwall R. Co.* v. *Mowatt*, 15 *Q. B. Rep.* 521; *Mitchell* v. *Newhall*, 15 *M. & W.* 308.) And a

right to an allotment of shares may support an express agreement to pay for them, the company being in no default. By the statute under which this company organized, those who subscribed the articles, and all persons who should from time to time become stockholders, became corporators.

It is said the first contract was not delivered. When the defendant signed it was in the possession of one of the directors, and although he did not remember of delivering it to the secretary, there is no evidence that the defendant directed or expected that it should be withheld; and the referee might well have found that the possession of the director was the possession of the company, under the circumstances.

Both subscriptions are expressed to be upon condition that the road shall be extended to Fort Miller bridge, and that the southern three miles shall be made and constructed at the same time, or previously to the northern three miles. I have no doubt a subscription may be upon a condition precedent. (*Morris Canal and Bank. Co.* v. *Nathan*, 2 *Hall*, 239.) If that is so here, the defendant is not liable, nor could he properly be considered a shareholder, until the condition had been fulfilled. But I doubt whether, under this act, there can be a subscription upon a condition subsequent; as that would be, in effect, withdrawing the capital.

The referee has found that the condition in relation to the time of construction was not performed; and there is a conflict of evidence, his report in this respect cannot be disturbed; although, from the testimony it seems quite evident that there was a substantial compliance, which is all that is required in such cases. The evidence is, that the northern part was planked first, but the south first " finished." The contract does not require that it should all be built at the same time precisely; and as the work was substantially carried along together and in good faith, I do not think the fact that the north part could be used first, was a breach of the condition. The agreement is not that the work on the north part shall at no time be in advance. That would be a narrow construction.

But if the north part was first constructed, I think these were

independent stipulations. The subscription of the defendant was for the purpose of building the road; and it is fair to give it that interpretation. The money was to be paid when calls should be made; and the day for the payment of the money might happen before the road was to be built: consequently the plaintiffs need not aver performance. (1 *Saund. R.* 320, *and notes.*) And this disposes of the objection to the second count; for a condition which goes in defeasance of a covenant should be shown by the defendant. (1 *Saund. R.* 233 *b, n.* 1, *d.* 1 *Chitt. Pl.* 278, 316.) And if this point had been well taken—if the referee could not, under the code, have disregarded it—it would have been better to have granted a nonsuit, rather than to refuse that motion and afterwards give judgment against the plaintiffs, upon that ground.

I am inclined to think by the acceptance by the plaintiffs of the second subscription for a less sum, that may be considered as a substitute for the first; at least as to amount, and especially, if the referee shall so find.

On looking over all the facts in this cause as presented on this motion, it appears to me the report should not be sustained. After articles, in which the subscribers thereto promised to pay for their stock, had been drawn up and signed, the defendant agreed to subscribe upon the books of the company upon certain conditions. Those articles, and the statute, may be considered the charter—the constitution of the company. Afterwards, and after the articles had been filed, and the corporation was in existence, and after the road had been located, as required by one of the conditions, and that which was, perhaps, a condition precedent, and the calls had been ordered, the defendant subscribed the second contract, drawn upon the books of the company, and on a leaf next to that containing the articles of association; and by so doing, I think he adopted them. About two months afterwards he attended and acted as secretary, at a meeting of the stockholders and directors, when the proposals of the contractor were received and accepted, by which the road was to be built according to the terms of the defendant's subscription, and to be completed on the day the

last call had been made payable.    In addition to this, the foreman on the work testified that the defendant aided in constructing the road, and gave directions as to laying the plank at Fort Miller, which was at the southern extremity of the road, and they were laid as the defendant directed.

All these circumstances present a pretty clear case.

The judgment must be reversed, and a new trial granted; the costs to abide the event.

[Saratoga General Term, May 1, 1854.    *Hand, Cady, C. L. Allen,* and *James,* Justices.]