Peoria and Oquawka Railroad Company *v.* Elting.

---

PEORIA AND OQUAWKA RAILROAD COMPANY, Plaintiff in Error, *v.* JOHN ELTING, Defendant in Error.

ERROR TO TAZEWELL.

A subscription to stock may be collected, although amendatory acts have been subsequently passed, affecting the original charter, by extending its powers.
Remedy by action to recover subscriptions is not impaired by the fact that the company has the power to declare a forfeiture of stock.

THIS is an action of *assumpsit*, brought by plaintiff against

defendant upon a subscription of said defendant to said plaintiff for stock in said company.

Declaration recites:

1st.   The act of the Illinois legislature, approved 12th February, 1849, entitled "An act to incorporate the Peoria and Oquawka Railroad Company," and the amendatory act passed and approved February 10th, 1851.

2nd.   The subscription signed by defendant, as follows: "We, the subscribers, severally agree to become stockholders in the Peoria and Oquawka Railroad Company, to the number of shares placed opposite our names respectively, and to pay the amount thereof in such installments as may be called for by order of the president and directors of said company.   Peoria, fourth day of February, 1850 ;" to which agreement defendant signed his name and placed opposite his name so subscribed, the number of ten shares, being in amount $1,000.

3rd.   Said company was organized under said act Jan. 20, 1850.

4th.   Defendant paid on his stock 5 per cent., being $50.

5th.   Declaration alleges usual promises and undertakings, and subsequent assessments by the president and directors of said company, to the whole amount of said stock subscribed, notice to defendant, and the refusal of defendant to pay.

Defendant interposed demurrer to declaration, and assigned special causes:

1st.   That said declaration is inconsistent in this, to wit: that the laws of 12th February, 1849, and 10th February, 1851, became laws before the organization of the company and subscriptions of stock by defendant, which it is averred took place on the 4th February, 1850.

2nd.   Because it is not averred what amount of stock was subscribed, nor what per cent., or that any per cent. of said stock was paid in at or before the time of the organization of said company.

3rd.   Because it is not shown that the company, on calling for payments or installments of stock, gave 30 days' notice in three newspapers.

4th.   Because plaintiff has shown no promise by defendant, and that their only remedy is in chancery.

5th.   Because, after defendant's subscription, the act of 10th February, 1851, authorized the company to proceed with the road when $100,000 should be subscribed, thus changing the character of the contract; and because said act of Feb., 1851, authorized the construction of a branch road from Monmouth to the Mississippi at or above Shohocton, not contemplated by the original act under which the subscription was made.

Peoria and Oquawka Railroad Company *v.* Elting.

6th. Because the General Assembly, by an act of June 22, 1852, without the consent of defendant, increased the capital stock of said company to $3,500,000.

7th. Because said General Assembly, by said act, without consent of defendant, changed the route of said road, and also the branch to the Mississippi.

8th. Because, by said act, said company was authorized to construct ferries across the Mississippi and Illinois, enterprises to which defendant did not subscribe.

9th. Because by said act said company was authorized to extend said road to the eastward to the state line of Indiana.

10th. Because by said act said company was authorized to borrow money on the credit of the company, and pledge the capital stock, mortgage the road, &c.

Upon the hearing, the demurrer was sustained and the plaintiffs abided by their declaration, and assigned, as cause for error in the Circuit Court, the sustaining of said demurrer.

This cause was heard at April term, 1855, of the Tazewell Circuit Court, before DAVIS, Judge. The cause was taken by change of venue from Peoria to Tazewell county.

MANNING and MERRIMAN, for Plaintiff in Error.

N. H. PURPLE, for Defendant in Error.

SCATES, C. J. The case, upon special demurrer to the declaration, presents only the substantial and technical sufficiency of the averments on it, to maintain this action. Of these we can entertain no doubt, upon the authority of adjudged cases in England and the United States, as well as our own courts.

The first objection is to the inconsistency in the averments, that acts of Feb. 1849 and Feb. 1851, were passed and had become laws before the subscription of defendant, and the organization of the company in 1850. If the averment is to be literally taken in its three dates, it will be rejected as absurd, and surplusage as to the priority of 1851 to 1850. It can work no prejudice to defendant, as it shows on its face, that all objections he has any right to make to the payment of his subscription, by reason of the amendatory act, are still open to him, notwithstanding the averment in this particular.

I need not pursue the special causes, nor the order of their assignment. The important ones will be noticed in substance and answered.

A subscriber's agreement for the formation of a company, with the view of applying for a charter to build a railroad, was held to be enforcible, by the company, after organization under

the charter; *Midland Great Western Railway Company* v. *Gordon*, 16 Mees. and Welsb. R. 804; and this too, where the agreement was for a railway only, and the charter authorized a railroad for part of the line, and the purchase of a canal for the remainder. This same principle had, in effect, been laid down, in the refusal to allow additional pleas to be filed, in *London and Brighton Railway Company* v. *Wilson*, 6 Bingh. N. C. 135, in respect to changes and deviations from the line adopted, but essentially changing the character of the company or enterprise, in which they proposed to, and had embarked. It has been so laid down, and these authorities approved, in *Barret* v. *The Alton and Sangamon Railroad Company*, 13 Ill. R. 506.

The principle is sanctioned in *The Pennsylvania and Ohio Canal Company* v. *Webb*, 9 Ohio R. 139; *Clark* v. *Monongahela Navigation Company*, 10 Watts R. 364; *Gray* v. *Monongahela Navigation Company*, 2 Watts and Serg. R. 159. And they show also, that subsequent amendatory acts may remedy omissions to comply strictly with the provisions of the charter, and that additional powers and privileges, conferred by subsequent amendatory acts, do not nullify the contracts and obligations of the stockholders to the company, or among themselves. Subsequent amendatory acts in this case, simply confer additional powers and privileges, if accepted by the company, by enlarging their capital, the borrowing money, mortgaging their road and property to secure it, extending the main line of the road, the building of branches, altering the line, and in adding facilities for crossing the Illinois and Mississippi rivers by ferries, &c., and is in no sense a change of the character of this enterprise, which still remains that for building and operating a railroad, with enlarged capacities and privileges, which may be highly promotive of its welfare and success, for anything apparent on this record. Nor does it appear that the company have accepted these powers and privileges, or propose to exercise them.

This subscription is enforcible at the common law, and the remedy is not in the least impaired by the power of forfeiture, conferred in the 6th section of the charter, for non-payment. (Acts 1849, p. 101.)

This is fully settled in *Klein* v. *The Alton and Sangamon Railroad Company*, 13 Ill. R. 514; *Ryder* v. *Same*, id. 516; *Hartford and New Haven Railroad Company* v. *Kennedy*, 12 Conn. R. 507, in which last this subject is fully and ably discussed, and shown that as a general proposition, the principle is not sustainable as laid down in *Andover and Medford Turnpike Corporation* v. *Gould*, 6 Mass. R. 40, and followed in 7 Mass. R. 102; 8 id. 138; 10 id. 384; 14 id. 286; 16 id. 94; 6 Pick R.

23–45; 10 id. 371; 14 id. 483; in Maine, 3 Fairfield R. 588; and in New Hampshire, 2 New Hamp. R. 380. And this was reäffirmed in *Danbury and Norwalk Railroad Company* v. *Wilson*, 22 Conn. R. 447, and we think sustained by reason, as well the decision of this court, in the above case, as in the recent case of *Cross* v. *The Pinckneyville Mill Company*, 17 Ill. R. 54.

Due notice of the assessments is averred; the character of the notice, or time and mode of giving it, need not be averred, but will become the subject of proof, when put in issue by plea.

The power to organize upon a subscription of $100,000, is expressly authorized by an amendment to the charter, and that is sufficient, for all the purposes of this trial, as if contained in the original charter. 2 Watts and Serg. R. 159; 10 Watts R. 364.

The declaration shows good cause of action against defendant, and the demurrer should have been overruled.

Judgment reversed and cause remanded.

*Judgment reversed.*