HON. DAVID JOHNSON,
HON. JOSEPH T. COPELAND,
HON. GEORGE MARTIN,
HON. SAMUEL T. DOUGLASS,   } Judges.
HON. ABNER PRATT,
HON. CHARLES W. WHIPPLE,
HON. WARNER WING,

---

DEXTER AND MASON PLANK ROAD COMPANY *vs.* MILLERD.

The defendant having signed the articles and subscribed for a portion of the capital stock of an association organized under the act to provide for the formation of companies to construct plank roads, approved April 8th, 1851, the 32d section of which provides that the directors may require payment of the sums subscribed to the capital stock, &c. *Held*, that such signing imported a promise to pay the amount of stock subscribed.

A construction given to the 32d section of said act:

Under the third clause of said section 32, providing that when no forfeiture·

---

*Hon. Sanford M. Green was elected Presiding Judge at the commencement of this term.

of stock is sought, the directors shall give notice of the payments required, and of the place and time where and when the same are to be made; the directors having failed to specify in their notice the *place where* the payment should be made; *Held*, not entitled to recover in a suit against the subscriber.

Case reserved from Washtenaw Circuit.

This was an action of assumpsit brought originally before a Justice of the Peace of Washtenaw county, to recover of the defendant $237 50, being the amount claimed to be due the plaintiffs, upon the defendant's subscription of two hundred and fifty dollars to the capital stock of the Dexter and Mason plank road company.

The plaintiffs became organized as a Corporation under the " Act to provide for the formation of Companies to construct Plank Roads," approved April 8, 1851, and the defendant became a stockholder by subscribing for ten shares of the capital stock, at twenty-five dollars a share, and paying five per cent. on the amount so subscribed.

The articles of association set forth that the Corporation is formed for the purpose of constructing and owning a plank road, from the village of Dexter, in the county of Washtenaw, to the village of Mason, in the county of Ingham, and provides that the capital stock shall be sixty-five thousand dollars, which shall be divided into shares of twenty-five dollars each.   These articles were signed by the defendant and the other original subscribers to the stock.

Payments were from time to time required by the directors of the Company, of portions of the stock so subscribed, of which notices were published, and the defendant failed to make any payment after the first one, of five per cent., which was made at the time of subscribing.

*O. Hawkins*, for plaintiffs.

1. The defendant is liable upon the naked subscription having in view the object of the law authorizing it.

The act referred to authorizes upon notice given *the open-ing of " Books" for subscribing to the stock of any road au-thorized by law to be built.*  (*Laws of* 1851, *page* 211, *sec.* 1.)

This book was *opened* as appears by the case certified, and the defendant subscribed 10 shares at $25 each and paid thereon at the time of subscription 5 per cent., being $12 50.

The word subscribed or subscription as used here has a defi-nite legal meaning attached to it, and is as well understood as the words " for value received," in a promissory note.   It means " *To promise to give a certain sum by setting one's name to paper.*"   It also means " *The act of contributing to any un-dertaking.*"

Keeping the object of the law in view and the understand-ing of each and every subscriber to the capital stock of said road, what in fact is the true legal interpretation of the con-tract?

This must be arrived at by the construction of the law as a. whole.

The law provides that when $200 per mile shall have been. subscribed, and 5 per cent. paid thereon in good faith, then the "*subscribers*" may upon notice elect directors, and they, the subscribers, shall also thereupon severally subscribe articles of association, which the defendant has done in this case. (*Laws of* 1851, *sec.* 1; *sec.* 2 *of said act, page* 212.)

It also appears by the case that there were five directors chosen, and that in all respects the Company was regularly organized.

The defendant having paid the 5 per cent. at the time of subscription, and the directors having made farther calls *in pursuance of the power in them vested by law* for the further payment of the capital stock so subscribed by the defendant. and others, the defendant refused payment.

The plaintiffs now insist that they are authorized to bring· this suit and can maintain the action upon the statute itself.. The law gives them the power to require payment of the sums. subscribed, &c.   (*Laws* 1851, 224, *sec.* 32.).

Again, the payment of the 5 per cent. makes the person a stockholder, it entitles him to vote in choosing its officers, &c. (*Ib. page* 213, *sec.* 5.)

The law declares the liability *of stockholders* for the debts of the Corporation—from which there can be no escape after having once subscribed for and paid the 5 per cent.—except by payment of the claim. The plaintiffs insist, independent of the sections above referred to in the statute, there is a sufficient consideration raised by inference of law upon the subscription itself and the privileges conferred upon the defendant, and from which an implied promise is raised that the defendant will pay for his stock when called for by proper authority and in a proper manner. (*Ib.*, 226, *sec.* 36; 12 *Conn. R.* 499; *Ib.* 530; 3 *Sand. S. C. R.* 446.)

There is no objection here as to the time or manner nor of the authority of the persons requiring the payment.

Upon the second point, that the authority to forfeit the stock for the non-payment of instalments *does not take away or impair the right of action* against the stockholder upon his *subscription,* and that the remedy by forfeiture is *cumulative,* is settled beyond controversy. (12 *Conn.* 449; 2 *Comst.* 330; 3 *Sand. S. C. R.* 466; *Angel & Ames* 556.)

*J. M. Walker,* for defendant.

1. Is the defendant liable in an action at law upon his subscription?

The plaintiff, as a corporation, has no such power at the common law, as to authorize the company to assess, for its own use, a sum of money on the corporators, and compel them to the payment of it by an action at law. (*Angel & Ames on Corp.*, 64–67–419; 2 *Kent Com.*, 277; 6 *Mass.*, 40; 10 *J. R.*, 217.)

If the plaintiffs have the right to make such assessments, it must be by virtue of the charter; and they cannot derive it from any other source. (2 *Kent Com.*, 299; 15 *J. R.*, 358; 2 *Cranch*, 127, *and note.*)

But if derived from the charter, *it is a new power, created and granted by the Legislature*, and the plaintiff can exercise and enforce that power *in the manner prescribed by the statute, and not otherwise.* (*Dwarris on Stat.* 641–*Stra.* 1125; 2 *T. R.* 395; 6 *Mass.* 40; *Dudley* vs. *Mayhew,* 3 *Comst.* 9; 5 *J. R.* 475; 3 *Mass.* 307; 5 *Id.* 514; 1 *Man. Mich. Rep.* 193; 1 *Blackf.* 405; 1 *Metc.* 553.)

Had the defendant, in addition to his engagement to become a stockholder, subscribed an agreement by which he promised to pay for the stock subscribed, or the assessments made thereon, it is conceded that assumpsit might have been brought upon such agreement, notwithstanding the right of the company to forfeit the stock and previous payments, as provided in the charter. (5 *Mass.* 80; 8 *Mass.* 273; 9 *J. R.* 218; 11 *Id.* 98; 14 *Id.* 238.)

But it is clear from the authorities that the right to bring this action is not put upon the ground that the defendant, by engaging to become the proprietor of certain shares, thereby became liable, nor that there is an implied undertaking to pay arising out of the relation of stockholder to the company, *but upon the ground of an express, personal and independent agreement to pay.*

No argument can be drawn from this class of cases, therefore, to show the plaintiff's right of recovery in this case.

There is no provision in the general plank road act, under which this corporation was organized, to authorize the company to enforce the payment of assessments by action at law. (*Sess. Laws,* 1851, *p.* 211.)

The subscription paper signed by the defendant contains no express promise or undertaking on his part to pay for the shares set opposite his name—there is therefore no *legal liability*, and consequently *no implied assumpsit* on the part of the defendant, and the plaintiff cannot maintain his action.

The only remedy is the forfeiture of the stock and previous payments, in pursuance of the charter.

It is sought to charge the defendant in this action upon an *implied assumpsit.* But it is well settled that the law will never imply a contract where there is an express one subsisting between the parties. (*Galloway* vs. *McFarland*, 1 *Doug. Mich. R.* 330.)

The question we are here considering was distinctly made in the case of Andover and Medford Turnpike Cor. *vs.* Gould, (6 *Mass.* 40,) and the authority of that case has been repeatedly recognized and affirmed by the Supreme Court of that State. (*Andover and Medford Turnpike Cor.* vs. *Hay*, 7 *Mass.* 102; *New Bedford and Bridgewater Turnpike Co.* vs. *White*, 14 *Mass.* 286; *Chester Glass Co.* vs. *Dewey*, 16 *Mass.* 94; *Salem Mill Dam Cor.* vs. *Ropes*, 6 *Pick.* 23; *Ripley* vs. *Sampson*, 10 *Pick.* 371; *Cutler, Ex. &c.* vs. *Middlesex Factory Co.*, 14 *Pick.* 483; *Middlesex Turnpike Co.* vs. *Swan*, 10 *Mass.* 393; 8 *Id.* 138.)

The same doctrine has been established by the Supreme Court of New Hampshire. (*Franklin Glass Co.* vs. *Alexander*, 2 *N. H.* 380.)

In the case of Trustees of the First Presbyterian Congregation in Hebron *vs.* Quackenbush, (10 *J. R.* 217,) a similar question was raised, and it was held that the plaintiff could not recover unless there was some special ground from which to infer a contract and promise to pay. (*Mann* vs. *Prentz*, 3 *Comst.* 422.)

We find the same rule laid down by Angel & Ames on Corp. 475.

2. The notices in this case were not sufficient.

If the plaintiffs are entitled to their action at law at all, they cannot have it until they have made the several assessments due and payable by giving the notices required by the act.

Until the plaintiffs are in a situation to forfeit the stock, they are not in a position to maintain an action at law.

Section 32 of the Plank Road Act requires two notices to

be given before they can forfeit the stock for non-payment of the assessments :   The one a notice of *six weeks, requiring payment* of the assessments—the other, a notice of 30 days, giving notice of the payment thus required, and stating the time and place of payment.

Here were three several calls, and but one notice given of each, respectively.

And then again, the first notice is insufficient, for the reason that it does not state with sufficient certainty the time and place of payment. (*Shipley* vs. *Mitchell*, 7 *Blackf.* 472.)

The second notice is insufficient, for the reason that it was first published on the 16th of February, requiring payment on the 23d, 24th, 25th and 26th days of March, then next—making the notices respectively, of 35, 36, 37 and 38 days—in neither instance six weeks.

The third notice is defective—

Because it does not sufficiently designate the time and place of payment.

The giving these notices are conditions precedent, and the statute must be complied with.

By the Court, GREEN, P. J.

The question reserved for our opinion is, whether the plaintiffs can recover the amount of the assessments specified in the notices, or any of them, against the defendant.

Sec. 32 of the act referred to, (*Laws* 1851, *p.* 224,) provides as follows : " The directors of any company incorporated under this act, may require payment of the sums subscribed to the capital stock, at such times and in such proportions and on such conditions as they shall see fit, under penalty of the forfeiture of the stock and all previous payments thereon, if payment shall not be made by the stockholders within sixty days after a personal notice, or notice requiring such payment shall have been published for six successive weeks in a newspaper published in every county in which

13

any part of said road is situated, if any be so published; and they shall give notice of the payments thus required, and the place and time when and where the same are to be made, at least thirty days previous to the payment of the same, in one newspaper printed in each county in or through which the said road is located, or by sending such notice to each stockholder by mail, directed to him at his place of residence."

This section requires particular attention, as, if rightly understood, it is believed that it will divest the question under consideration of much of the difficulty and embarrassments that have been supposed to encompass it. It is to be observed, then, 1st, that it authorizes the directors to require payment of the sums subscribed to the capital stock, at such times, and in such proportions, and on such conditions, as they shall see fit ; 2d, it authorizes them to impose the penalty of forfeiture of the stock, and all previous payments thereon, if payment shall not be made within *sixty days* after a *personal* notice, or after notice requiring such payment shall have been published for *six successive weeks* in a newspaper published in every county in which any part of the road is situated, if any is so published ; but 3d, when no forfeiture of the stock is sought, the directors are required to give notice of the payments thus required, and of the place and time where and when the same are to be made, at least *thirty days* previous to the payment of the same, in one newspaper printed in each county in or through which the road is located, or by sending such notice to each stockholder *by mail*, directed to him at his usual place of residence.

That this is a fair analysis of that section, will hardly be questioned. When the object is to enforce payment under the penalty of forfeiting the stock, either a *personal* notice of *sixty days*, or a published notice for *six* successive weeks, is required; but when payment is proposed to be enforced only by the ordinary means, *thirty* days' notice by publishing or by mail is sufficient.

The directors representing the corporation may pursue either course, as they judge best for the interest of the Company. They may require payment *not* under the penalty of forfeiture, and if they do so, and give notice accordingly, have they any remedy by which to compel such payment? If they would have such remedy without any provision authorizing a forfeiture, it seems clear that the power to impose such penalty is only cumulative, and that they may pursue any other remedy which the law would afford them in the absence of any such power. We may proceed therefore to consider this question as if no forfeiture of the stock were authorized.

Do the acts of the defendant in signing the articles of association and subscribing for a portion of the capital stock of the Company, import a promise to pay the amount of such stock at such times, in such proportions, and on such conditions as the directors should require, upon giving the notice provided for by the statute? The defendant with others became a party to the articles of association for the avowed. purpose of *building and owning* a plank road from Dexter to Mason. They mutually agree that the capital stock of the Company should be sixty-five thousand dollars, and each one of them severally became the proprietor of *such* number of shares as he thought proper to subscribe for. When the company was thus organized, all the provisions of the act under which they associated relating to the course of procedure to, effect the object in contemplation, became part and parcel of the articles of association as fully and completely as if they had been formally written out and signed by each stockholder. Let sec. 32 be read as a portion of the compact between the defendant and each individual subscriber to the capital stock and the corporation, and it contains an express stipulation by each that the directors of the Company *may require payment* from them respectively, of the amount of capital stock which each has subscribed, as therein expressed; and requires that such directors shall give thirty days' notice

previous to the time fixed for such payment in one of the modes pointed out. Now, what is authorizing the directors to require payment, but conferring upon them the right to make such requisition effectual? or, in other words, promising by the stockholders to make payment at such times, in such proportions, and upon such conditions as the directors may see fit to require, upon the specified notice being given. If it does not import this—if such is not the true intent and meaning of the language—if the sums so lawfully required to be paid do not become *due and payable* from the stockholders to the Corporation, after the proper notice has been given—then the words used do not possess the force generally attributed to them, but they amount to a mere mockery. The stock, which is in law deemed to be personal property and may be transferred as the by-laws of the Company shall prescribe, is a sufficient consideration for the undertaking of the stockholder. It entitles him to all the privileges of membership in proportion to the number of shares owned by him, including a just proportion of the profits of the enterprise.

It is conceded by the counsel for the defendant, that if in addition to his engagement to become a stockholder, he had subscribed an agreement by which he promised to pay for the stock subscribed, assumpsit might have been brought upon such agreement. Now if the view which we have taken of the engagement of the defendant in this case be correct, he has subscribed such an agreement. Suppose the defendant had applied to B for the purchase of a horse, and B had informed him that the price was one hundred dollars, of which he required five per cent. on delivery, and that he should have the right to require payment of the balance at such times, in such proportions, and on such conditions, as might suit his convenience, upon giving thirty days' notice to the purchaser, to which terms the defendant had assented by signing a written instrument to that effect, taken the horse, and paid down the stipulated five per cent. of the price.

Here would be no direct promise to pay the balance of the price, but the language used would just as certainly and clearly import a promise or undertaking to pay, as if it had been expressed in the most direct and positive terms. This is too clear to admit of doubt; and this represents precisely the obligation which the defendant entered into with the plaintiffs. Indeed the right of the plaintiffs to maintain this action seems too unquestionable to require any extended notice of adjudged cases in support of it.

The opinion of the Court in the case of the Hartford and New Haven Railroad Company *vs.* Kennedy, (12 *Conn.* 499,) is very elaborate, and exhibits great research and thorough investigation.

The charter under which the plaintiffs organized contained the following provision: "The directors of the said Company may require the payment of the sum or sums subscribed to the capital stock of said Company, at such times and in such proportions, and upon such conditions, as they may deem fit; and in case any stockholder shall refuse to make payment pursuant to the requisition of the board of directors, the stock of such stockholders, or so much thereof as may be necessary, may be sold by the directors of said corporation, at public auction, after the lapse of six months from the time when the payment became due, and all surplus money, the avails of such sale, after deducting the payments due and interest thereof, and the necessary expenses of the sale, shall be paid over to such negligent stockholders."

The defendant, Kennedy, subscribed for stock by signing a writing in the following words: "Whereas the General Assembly of the State of Connecticut, at their session in May, 1833, passed a resolution to incorporate the Hartford & New Haven Railroad Company, with power to construct a Railroad or way from the town of Hartford to the city of New Haven, we do hereby subscribe to the stock of said Railroad, the number of shares annexed to our names respec-

tively, on the terms, conditions and limitations mentioned in said resolution:" and it was held that so subscribing imported a promise to pay the amount of the stock subscribed for, upon which an action of assumpsit could be maintained.

The same doctrine was held in Sagory *vs.* Dubois, (3 *Sandf. R.* 466,) and in Small *vs.* The Herkimer Manf. Co., (2 *Comst. R.* 330.)

Several Massachusetts cases are referred to by the defendant's counsel, which, it is claimed, establish a contrary doctrine. Those cases may all be distinguished from the one now before us. The Court, in the case of New Bedford & Bridgewater Turnpike Corporation, (8 *Mass. R.* 138,) say: "Several cases of this kind have already been decided in this Court, and each of them *on the force and effect of the engagement entered into.* The general principle upon which they all rest is, that where the party makes an express promise to *pay* the assessments, he is answerable to the Corporation upon such promise, and may be compelled to the performance of it by action at law. When, on the other hand, one by subscribing the act of association, simply engages to become a proprietor of a certain number of shares, without promising to pay assessments, then the only remedy which the Corporation has, is by sale of the shares to raise the amount assessed on them."

In the case then before them, they say: " There is no express promise to pay, nor is any language used from which the law can raise an implied promise." Had such language been used in the subscription paper, as amounted in law to a promise, the defendant would unquestionably have been held liable in assumpsit.

In the case of the Andover & Medford Turnpike Company *vs.* Gould, (6 *Mass. R.* 40,) the subscription paper upon which it was claimed the promise arose, was an agreement by the defendant to take one share in the road, and be a proprietor therein. The power to make assessments on the shares

of the stockholders was not expressly given by the statute. under which the plaintiffs organized, but was said to be implied from a provision contained therein, that whenever any proprietor should neglect or refuse to pay a tax or assessment agreed on by the Corporation to their Treasurer in sixty days after the time set for payment, the Treasurer might sell the share of the delinquent proprietor at public auction, for the payment of the tax and the charges of the sale. It was held that such subscription did not import a promise to pay the assessments, and the Court was probably correct in its conclusion. Our statute, however, as we have already seen, is widely different, and expressly authorizes the directors to require payment of the sums subscribed.

But whether or not the decisions in Massachusetts may be regarded as conflicting with those in Connecticut and New York, we cannot but regard the latter as well based upon sound principle and solid reason. If those who subscribe for stock in Plank Road Companies could not be compelled to pay for such stock, the consequences would often be ruinous to men of small means who embark in such enterprises in good faith, and who might be thus hopelessly embarassed by being subjected to the payment of larger debts contracted by the Corporation upon the faith of such subscriptions.

But before an action at law can be maintained for the amount of the stock, notice of the required payment must be given as provided by the statute, and it is claimed that the notices proved to have been published on behalf of the plaintiffs are insufficient. According to the construction given to sec. 32, such notices need have been published only thirty days before the time prescribed for the payment to be made, and all the notices were published more than that length of time.

But they are required to specify the *place* and time *where* and when the payments are to be made. The notice of February 11, 1853, requiring payment of forty per cent. of the

stock subscribed, is full and specific in these respects. The one of April 11, 1853, requires payment to be made " at the office of the Treasurer of said Company," and that of April 26, requires payment to be made ".to the Treasurer of said Company," without in either case, naming the *place where* such payments are to be made. This defect is fatal to the plaintiffs' action so far as the payments embraced in the two last mentioned notices are concerned, but they are entitled to recover for the forty per cent., amounting to one hundred dollars with interest from the time when it became payable.

Let it be certified to the Circuit Court for the county of Washtenaw as the opinion of this Court, that the plaintiffs can recover against the defendant, the assessments mentioned in the notice thereof, bearing date on the 11th day of February, A. D. 1853, amounting to the sum of one hundred dollars, together with the interest thereon, from the time when such assessments were made payable respectively, and that they cannot recover in this action the assessments mentioned in the other two notices referred to in the case reserved by said Court, and making a part thereof, for the reason that such notices did not specify the place where the payments therein mentioned were to be made.

Certified accordingly.