CARSON *vs.* THE ARCTIC MINING CO.

## James Carson vs. The Arctic Mining Company.

One who, by signing the articles of association, becomes a stockholder in a Company organized under the Act to authorize the formation of Corporations for Mining and Manufacturing Purposes, approved Feb. 5th, 1853, and neglects to pay an assessment for the stock subscribed, for sixty days after the same is payable by the call and due notice thereof, whereupon the stock is sold by the Company in pursuance of said Act, but an amount less than the assessment realized therefor, is liable in an action of assumpsit, in favor of the Company, for the deficiency.[*]

*Heard May* 13*th. Decided July* 10*th.*

Error to Wayne Circuit.

This was an action of assumpsit, in which judgment was taken by default, for want of appearance and plea.

The declaration contained two special counts and the common counts. The first special count set forth that the plaintiff below (defendant in error) was a corporation under the Act of 1853 (1 *Comp. L.* 577), in which the defendant was an original shareholder, and that he signed the articles of association, by which he became the owner of 17,000 shares of $25 each, and received certificates therefor, whereby he became liable for and promised to pay all assessments, &c.; that an assessment of fifty cents per share was directed when the defendant was owner of 2,050 shares, and that, on his refusing to pay, said shares were sold in accordance with the provisions of section eleven of said Act, and section three of the supplementary Act of 1855 (1 *Comp. L.* 581), and that said shares brought only five cents on the share, leaving forty-five cents still due on each share, which the defendant became liable, and promised, to pay. The second special count was substantially like the first, except that it omitted the allegations relative to the sale of the shares, and alleged a refusal to pay any of said installment of fifty cents.

---

[*] The case of *The Buffalo and N. Y. City R. R. Co. vs. Dudley,* in which the legal principles discussed and passed upon by the Court in this case were reviewed by the Court of Appeals of New York, though decided before, was not reported until after the decision of this case.—See 14 *N. Y.* 336.

CARSON vs. THE ARCTIC MINING CO.

*W. P. Wells*, for plaintiff in error:

1. The plaintiff in error could not be liable in an action at law for the assessments upon the stock subscribed for.

Where the statute under which a corporation is organized confers on the corporation the power to impose and compel payment of assessments, it is a new power. — 2 *Kent Com.* 299, *and the cases cited*; Angell & Ames on *Corp.* § 71; 6 *Mass.* 40. And where a new power is conferred by the statute, and the means of executing it are provided by the same statute, the power can be executed in no other way.— *Sedgw. on Stat. & Const. L.* 94; 2 *Burr.* 799; 1 *Metc.* 130, 138; 3 *Mass.* 309; 5 *Johns.* 175; 3 *Hill*, 39; 3 *Comst.* 9; 1 *Mich.* 193. When, therefore, an Act of Incorporation provides for the forfeiture and sale of stock upon failure to pay assessments, it is an exclusive remedy. — *Sedgw. on Stat. & Const. L.* 93, *Note*; Angell & Ames on *Corp.* §544; 6 *Mass.* 40; 7 *Mass.* 102; 8 *Mass.* 138; 14 *Mass.* 285; 10 *Pick.* 370; 14 *Pick.* 483; 10 *Maine*, 478; 31 *Maine*, 470; *Ibid.* 573; 39 *Maine*, 44; 2 *N. H.* 380; 1 *Cai. Cas.* 86, 95; 17 *Barb.* 567; 2 *Vt.* 393; 24 *Vt.* 466.

In order to maintain an action at law, it is necessary that the Act of Incorporation should, in express terms, impose on the shareholder a personal liability to pay the installments.— 7 *T. R.* 36; 5 *Taunt.* 801; 1 *Ad. & E.* 256; *Ibid.* 271; 3 *Exch.* 565; 16 *Eng. L. & Eq.* 55. The case of *Dexter & Mason Pl. R. Co. vs. Millerd*, 3 *Mich.* 91 is to be distinguished from the case at bar by the important difference in the terms of the Acts of Incorporation. In that case, the language of the statute was: "The directors of said Company *may require payment*," &c. And the cases in Connecticut and New York, relied on by defendant in error, are subject to a similar criticism.

In the case at bar no promise to pay is alleged except that which defendant in error claims is to be implied from the fact of subscription to the stock.

5 MICH.—T.

2. But if it be conceded that in the absence of any statutory provision imposing a personal liability upon the stockholder, the corporation may resort to the remedy by forfeiture and the remedy by action, it is clear that an election must be made — both remedies can not be pursued.

Where a remedy exists at common law, and a new remedy is given by statute, the exercise of one is a bar to the pursuit of the other. — *Sedgw. on Stat. & Const. L.* 93; 15 *Johns.* 220; 3 *Hill*, 39.

The forfeiture and sale of the stock operates as a satisfaction of the claim of the corporation for unpaid assessments, and is a bar to a suit for their recovery. — 2 *Comst.* 330; 10 *Barb.* 271; 11 *Ala.* 437; 2 *Bibb*, 576; *Sedgw. on Stat. & Const. L.* 94.

It is clear that the stock was *forfeited* to the corporation upon the failure to pay the assessments. — *Comp. L.* § 1827. And the sale may be regarded as a confirmation of the forfeiture. After such confirmation, no right of action remains to the Company. — 2 *Man. & Gr.* 674; 4 *Exch.* 417. So the commencement of action is a bar to forfeiture. — 3 *Exch.* 18.

To maintain an action after forfeiture, it is necessary to provide expressly in the Act of Incorporation for the recovery of the amount of installments due after sale of the stock. — 22 *Conn.* 456; and see 10 *Fos.* 390.

After forfeiture, the stock can not be regarded in the light of a pledge or mortgage to the corporation. — 2 *Comst.* 330.

The relation of the corporation to the stockholder is that which exists between vendor and vendee of personal property sold conditionally. The corporation sells the stock conditionally upon payment of the installments; and the right to forfeit and sell the stock upon non-payment is the same as the right of the vendor to reclaim the property sold. After that right has been exercised, no claim for the purchase-money exists. The title to the stock is the consideration for the promise to pay the installments. If the corporation, by

their own election, forfeit and sell the stock, they preclude themselves from furnishing it to the shareholder.

3. If either of the special counts is bad, the judgment must be reversed. — 2 *Burr.* 899; 9 *Pick.* 546; 5 *Johns.* 430; *Ibid.* 476; 8 *Vt.* 484; *Ibid.* 501; 18 *Vt.* 33.

*Walkers & Russell*, for defendant in error:

Corporations created under the Act of 1853, which contains a naked and unqualified provision for the sale of the stock of delinquent stockholders, and for the refunding of any surplus, have (1) aside from the statute, their common law action against delinquents for any installment called in; and (2) may have recourse to either the common law or statutory remedy at their election; or (3) to both in succession.

Aside from the statutory provision for a sale, assumpsit would lie against the shareholder. No express promise to pay is necessary — from the relation of stockholder and company arises an implied promise to pay calls as they shall be legally made, to the amount of the shares.

A subscription which should not involve a legal liability to pay would be farcical; and if such had been the understood law upon the subject, the system of internal improvements, for which our country is conspicuous, never would have existed. — *Redf. on Railw.* 71, 72, *cases collected in Note* 3; 12 *Conn.* 499; 20 *Conn.* 178; 22 *Conn.* 435; 18 *Barb.* 297; 3 *Sandf. S. C.* 161; *Pierce's Am. R. R. Law*, 101, *et seq.*; 3 *Mich.* 91.

The Act provides for articles of agreement, setting forth the capital stock, amount of shares held by each; the signature, and the calling in by installments, — all of which are averred in the declaration.

Then comes the provision that the stock "*may* be sold," and the residue refunded; and the simple inquiry is, Does this provision take away the right of suit? There is certainly nothing upon the face of the statute to indicate any intention to take away the remedy which would exist aside

from this provision. The intent seems to be, to give the corporation a lien upon individual stock by way of security, in the nature of a mortgage or pledge—to give a cumulative remedy.

If this be so—as in any case when collaterals are given—the creditor may either endeavor to realize therefrom, or look to the personal responsibility of the debtor.—See 4 *Exch.* 447; 16 *Eng. L. & Eq.* 55.

The power of forfeiture is a cumulative remedy, unless the statute *expressly provides* that no other remedy shall be resorted to.—*Redf. on Railw.* 72, and cases cited; *Pierce's Am. R. R. Law.* 100; 17 *Ill.* 429; *Ibid.* 54; 21 *Wend.* 273, 296; 2 *Hill,* 127; 10 *Barb.* 260; 18 *Barb.* 300; 5 *Ala.* 787; 2 *Bibb,* 580.

Such is the general rule when a statute affirmatively provides a remedy.—*Sedgw. Stat. & Const. L.* 93, 403, *Note.*

That the corporation may resort to both remedies in succession, results from the views taken above. The sale of collateral securities operates simply as a payment *pro tanto,* and an action lies for the deficiency.

The converse of the proposition, *i. e.* that the plaintiff might proceed to judgment, and *afterwards* forfeit the stock for the same delinquency, is admitted by Gardiner J. in 2 *Comst.* 330.

The case in 21 *Wendell,* cited, was reversed in the Court of Appeals, 2 *Comst.* 330. But it is to be observed that the statute of New York did not provide for a *sale* as the Michigan statute does, but for "*a penalty of forfeiture* to the company of the shares and all previous payments made thereon." The reasoning, in that and similar cases, does not apply to the Michigan statute: the provision is not for a *forfeiture* but for a mere sale, and *rendering back any surplus,* which makes the illustration of a mortgage and strict foreclosure exactly in point; while that of a conditional sale, the comparison of the Court in 2 *Comstock,* has no parallelism whatever.

No case can be found holding that a mere sale is an exclusive remedy where there is a provision for refunding any surplus.

Martin Ch. J.:

The question of the liability of the plaintiff in error, in an action at law, for the calls upon his subscription for stock, was settled by this Court, in the case of *The Dexter & Mason Pl. R. Co. vs. Millerd*, 3 *Mich.* 91, in which it was held that the signing of the articles of association and subscription for stock imported a promise to the Company to pay the amount of such subscription when called in, although the instrument contained no express promise to that effect. To this decision, founded as we conceive it to be in justice, and based upon sound reason, we shall adhere.

An attempt was made upon the argument of this case, to distinguish that from the present, but we can perceive no substantial difference in principle between them, and none except what may spring from mere verbal criticism. The former was under the general Plank Road Act, the present under the general Mining and Manufacturing Act. The directors of the plaintiff, in the one case, were authorized to require payment of the sums subscribed, &c. (*Comp. L.* § 1912); those of this plaintiff below to call in the subscription to the capital stock by installments, &c. (*Comp. L.* § 1809); and both Acts denominate the installments thus required to be paid, or called in, as debts—that is, as thereafter due and payable to the Company. We can not regard the difference in the language of these Acts as one affecting the powers of the different corporations, or as indicative of an intention to confer upon the one a greater authority than upon the other. It is a different expression of the same thing—the Legislature intending in both instances to confer upon the directors such power and authority as might be necessary to enable them to secure the payment of the consideration of the purchase of stock, so as to insure the ob-

jects of the association, and to secure both the stockholders, and the public from imposition and fraud. And, upon verbal criticism, it is difficult to comprehend how, from the words themselves, in the connection in which they are employed, the directors of the one corporation can require payment of an installment, without calling for it, or those of the other, call for such payment, without requiring it. In both cases, it is a demand of payment, and the common law provides the necessary remedies and requisites to enforce it.

The reasoning of the Court in *Dexter & Mason Pl. R. Co. vs. Millerd*, and of the Supreme Court of Connecticut, in *Hartford & New Haven R. R. Co. vs. Kennedy*, 12 *Conn.* 499, we regard as fully applicable to this case, and as based upon sound considerations and wholesome policy. Indeed, the whole current of decisions, both in this country and in England, establishes the right of action for delinquent installments, and the apparently conflicting decisions of the courts of Massachusetts, Maine, and New Hampshire, which have been referred to, will be found to arise upon facts and considerations which in no wise affect the class of cases within which the present is embraced.—See *Redf. on Railw.* 70, 71, § 49, *and Notes; Hartford & New Haven R. R. Co. vs. Kennedy*, 12 *Conn.* 499; *The Northern R. R. Co. vs. Miller*, 10 *Barb.* 260.

The only question arising in this case, for our consideration, is the right of the Company to maintain this action for the deficiency remaining after a sale of the stock, for payment of the calls upon which Carson was delinquent. The determination that a right of action, to recover unpaid installments or calls, exists at the common law, relieves this question of much of the difficulty which is supposed to surround it, and disposes of most of the arguments found in the books against the maintenance of such action; for the right once existing, it must continue, until satisfaction of the demand.

But it is claimed by the plaintiff in error that the de-

mand in this case was satisfied by the forfeiture of the stock, and that the sale was a confirmation of such forfeiture. If it be true that the stock was forfeited to the use of the Company upon the failure to pay the assessment, there would perhaps be no difficulty in holding that the remedy by action was taken away thereby; and such is the weight of authorities (see, among other cases, *Small vs. The Herkimer Man. Co.* 2 *Comst.* 330; *Allen vs. Montgomery R. R. Co.* 11 *Ala.* 437); and when forfeiture is made an alternative and not a concurrent remedy, such is most certainly the result.—See *London & Brighton R. Co. vs. Fairclough,* 2 *Man. & Gr.* 674; *Edinburgh R. Co. vs. Hobelwhite,* 6 *M. & W.* 715; *Giles vs. Hutt,* 3 *Exch.* 18; *Great Northern Railway vs. Kennedy,* 4 *Exch.* 417.

But by forfeiture in the sense employed in all these cases, and all others of the same class, is meant the reclamation by the corporation of the entire stock to its own use; and this result is held to follow upon the principle that such forfeiture necessarily involves a total loss of interest in the thing forfeited, by the party in default, and a resumption by the Company of the entire consideration of the debtor's promise. The stock forfeited vests absolutely and beneficially in the Company, and the debtor can have no benefit from it or its proceeds. We shall see, as we progress, that no such consequences attend the sale of the stock under the charter of the present defendant in error, and that consequently there is in this case no forfeiture which satisfies the call and extinguishes the Company's claim therefor.

The case of *Small vs. The Herkimer Manufacturing Co.* is familiar to the profession, and a consideration of the reasoning of the Court of Appeals, in deciding it, will illustrate the view we hold of the present. The question there was as to the effect of a forfeiture for non-payment of a subsequent call, upon actions commenced for prior unpaid installments. The language of the charter of the Company authorized the directors to call upon the stockholders for payment

of their subscriptions, at such times and in such proportions as they should see fit, under penalty of forfeiture to the Company of their shares, and all previous payments made thereon. The Supreme Court had held that the stock was holden by the Company as security, in the nature of a mortgage, and that the forfeiture was nothing more than a strict foreclosure: but the Court of Appeals, from a consideration of the nature and incidents of a forfeiture, held that this was error; that the Company did not have a lien upon the stock, in the nature of a mortgage or pledge, but that the transaction was a conditional sale, and that the absolute title to the stock could only be acquired upon the payment of the purchase-money, until which event the right was reserved in the Company to reclaim the property upon non-payment of any installment of the purchase-money. In discussing this proposition, and the effect of the forfeiture upon the pending action for prior calls, Gardner J. says: "The forfeiture embraces the entire consideration of the defendant's promise. The directors can not graduate it according to the amount of the call. The right is not divisible, but extends to the whole subject of the contract. The call is made a condition precedent to the forfeiture—the *occasion* upon which it may be enforced: but, when made, it applies to the 'sum subscribed,' and not to the particular installment." And the reason he assigns for this conclusion is worthy of particular notice, as potent in the present case to establish, *e converso*, this Company's sale to be absolute, and its lien upon the stock to be in the nature of a mortgage or pledge. "This follows," he says, "necessarily from the principle in which we all agree, that there is no legal mode of ascertaining the value of the stock."

The language of Hoyt J. is also worthy of consideration, as showing the grounds upon which the right of forfeiture is held to make the sale of stock conditional, and the remedy, consequently, final. "I do not think," he says, "this is to be regarded in the light of a mortgage. Upon a foreclosure

and sale of property mortgaged, if it bring more than the debt, the mortgagor is entitled to the surplus. But no provision is made for the Company's refunding the surplus in this case. And if the Company, after forfeiture, should sell the stock for a sum beyond the amount unpaid thereon at the time of forfeiture, the defendant could not recover such surplus. Again, in all cases of a mortgage, the mortgagor has an equitable right of redemption until a strict foreclosure, or a foreclosure and sale, of the mortgaged property. But no such remedy exists for the redemption of the stock forfeited under the provisions of a statute like the one in question." And he concludes: "I can not see how this can, upon principle, be regarded as a mortgage. On the contrary, it has, I think, more of the properties of a conditional sale, where the absolute title does not pass until payment in full."

Now, this reasoning incontrovertibly establishes the proposition that the absolute and conclusive effect of a reservation of the penalty of forfeiture is to render the sale of stock to which it attaches conditional, and that the enforcement of the remedy obliterates the contract of sale, and extinguishes all rights of action upon it. But if the reasoning establishes this fact, it also establishes the further proposition, that where the security reserved is less than forfeiture; where, as under our statute, it is a simple power of sale, with the right reserved to the debtor to any surplus which may remain; then the sale is absolute, and the security is in the nature of a mortgage or pledge.

The case of *The Great Northern Railway vs. Kennedy*, 4 *Exch.* 417, we regard as precisely in point. Under its charter, that Company was authorized to forfeit and *sell* delinquent stock, rendering the surplus to the debtor. The action was for unpaid calls. Plea, *puis darrien continuance*, that after the action was commenced, the Company had forfeited and sold the stock, &c. Upon demurrer, this plea was held bad, 1st, Because the remedy was cumulative, and not alternative; and, 2d, Because the remedy by forfeiture and

CARSON *vs.* THE ARCTIC MINING CO.

sale was a security for the calls in the nature of a mortgage or pledge. Upon this latter point, Parke B. says: "Until the Company have finally disposed of the shares, and are satisfied the debt and costs, they may continue this action. When they have sold the shares, and converted them into money, the defendant would be entitled to credit to the extent of the amount for which the shares sold." And Rolfe B. says: "It is clear, from the language of the 34th and '35th sections, that the declaration of forfeiture is in the nature of a mortgage. The Company are not to sell more of the shares than will be sufficient, as nearly as can be ascertained, to pay the arrears of calls, together with interest and expenses; and if there be any surplus, it is to be paid to the defaulter, who has a right to redeem at the last moment. This shows that the forfeited shares are a security only until payment." This reasoning is applicable to the case at bar, and impels us to the conclusion that the remedy by sale, given by our statute, is cumulative upon that by action, and that, until actual satisfaction, there is no bar to an action for the arrears of calls.

This case is in harmony, also, with *Small vs. Herkimer Man. Co.;* and the two illustrate the difference between the effect of a forfeiture to the use of the Company, and of a forfeiture and sale to enforce a security.

. The effect of a strict forfeiture is to rescind the sale, and thereby condemn the stock to the use of the Company, regardless of its value, or the amount of the payments which have been made upon it. The call may be for five dollars, and the value of the stock one hundred dollars, yet this difference between the call and the value is absolutely lost to the stockholder, and goes to increase the resources of the Company. For these reasons, and as the remedy is optional with the Company, there is propriety in holding that the sale is conditional, and that the forfeiture satisfies all arrears of calls. It may also well be so held, because, when the stock is forfeited, it is re-taken at its nominal value, which must

always exceed the call, and can not be taken at any other, as there is no legal mode of ascertaining its real value. Not having parted with the absolute title, the Company has no concern with the market value, nor can it be permitted to insist that the real value is less than that the charter has affixed to it, and at which it was taken by the stockholder. It can not speculate upon its own stock in a manner so detrimental to the interests of its members and the public, or be allowed to hold the value of its stock to be at one price on the sale, and at another on the rescission of the sale.

But, as we have seen, the effect of a sale of the stock is altogether different. It had been absolutely, and not conditionally sold to the stockholder, and the security of the Company is in the nature of a mortgage for the purchase-money. The sale is a foreclosure, upon which the Company can only make the amount of the calls — the surplus, if any, going to the defaulter. Hence the Company is not, and should not be, bound by the nominal value of the stock, but may go out into the market to find its value there; and the benefits arising from its real value accrue to the delinquent, who should, by all the analogies of the law, suffer the loss of its depreciation. This is equality, and operates as a protection to the Company by furnishing the means of securing the payment of the capital stock upon which its operations are based, and protection to all its members, and to those dealing with it, by preventing the voluntary abandonment by a stockholder of his enterprise whenever he finds it hazardous, or capriciously chooses to do so; thereby freeing himself from liability for the arrears of calls which have been demanded of him. As he reaps the benefit of the appreciation, so he should suffer the loss of the depreciation of his stock; and we can perceive no sound reason why a different rule should obtain in the case of a mortgage of stock from that which exists in every other case of a mortgage of personal property to secure the payment of the purchase-money.

It was contended on the argument that the right to sue

for arrears of calls after sale can only exist by virtue of statutory authority; and that the cases recognizing this right do so upon this ground. With the exception of *Troy & Greenf. R. R. Co. vs. Newton*, 1 *Gray*, 544, we do not so read the cases; and that view may have been well taken in that case, in consideration of the previous course of decisions of that Court. In *Danbury & Norwalk R. R. Co. vs. Wilson*, 22 *Conn.* 436; this right is expressly recognized, upon principles springing from the right to sue for the calls. The Court says: "The defendant further insists that the plaintiffs, by the sale of the shares, are precluded from maintaining this suit. That claim is directly opposed, not only to our decision in *Hartford & New Haven R. R. Co. vs. Kennedy*, but also to the general Railroad Act, which provides," &c. And it being established that a right of action exists for an unpaid call, it is difficult to maintain the proposition that anything short of complete satisfaction by payment will discharge it. And in our opinion it can only be done by the arbitrary adoption of a rule in favor of stock operators, utterly repugnant to those which govern every other class of citizens. If the effect of a sale, unlike that of a forfeiture, is to foreclose a security, and not to rescind a contract, it should also be to satisfy *pro tanto* the debt secured, leaving to the Company the further remedy by action for the deficiency, if one exists, as in all other cases. And we should be extremely reluctant to recognize as authority any adjudications holding a contrary rule, unless based upon some principle not hitherto developed.

We have bestowed upon this case the careful consideration which its importance demands, and the result of our examination of all the authorities within reach, is, as already intimated, That the remedy by sale of the stock is cumulative, and that a resort to it does not debar the Company of a subsequent action, if any deficiency should be found to exist— a result which we think introduces no novelty into the law, but accords with the whole doctrine of remedies upon obligations and their securities.

CARSON vs. THE ARCTIC MINING CO.

The judgment of the Court below is therefore affirmed, with costs.

MANNING and CHRISTIANCY JJ. concurred.

CAMPBELL J. *dissenting:*

Two questions arise in this case: *First*, Whether a stockholder in a Mining Company, organized under the law of 1853, is liable to an action for calls upon shares; and, *Second*, Whether he is liable for any deficiency which may remain after the Company has sold his shares on such calls.

No question can arise here upon any liability which a person may voluntarily take upon himself by a promise contained in a separate subscription. Here there is no subscription, properly so called, at all. The articles of association contain no promises, and are merely a statement of the distribution of shares. If there is any liability to an action, it lies against all stockholders as such, and the subscription has nothing to do with it. With the exception of the cases to which I will refer presently, the authorities universally maintain that no action lies upon the mere relationship of stockholder in any case; that in order to maintain such an action there must be either an express promise, or an express right of action given in terms by the charter or general law; and that a subscription whereby one agrees to take stock, without any further promise, creates no right of action, but places the subscriber on the footing of a mere stockholder by assignment or otherwise. Every case (with the exception referred to) which has allowed an action, has allowed it on those conditions only, and all others have been repudiated. The decisions establishing this doctrine have been repeatedly made in Massachusetts, Maine, New Hampshire, Vermont, New York, Pennsylvania, Alabama, and in detached cases elsewhere.

In England no suit has ever been maintained on any other principles. The English charters are always express,

where any action is allowed. And it would be very difficult to create an ambiguity under the very carefully drawn statutes of that country. No case can be found there where any implied assumpsit has been maintained by a Company for stock assessments. And the only case reported in which any similar question has arisen is *Walker vs. Bartlett*, 33 *Eng. L. & Eq.* 261, where a person had sold to another stock, on which, by the law, an action lay for calls, and was sued and compelled to pay certain calls made after the assignment, because his vendee did not register the transfer, but left the stock standing in the vendor's name. The vendor brought an action against his vendee to recover the money he had thus been compelled to pay, and was non-suited, on the ground that the law would raise no implied promise out of the transaction. The question being raised before the full bench, the non-suit was made absolute. The principle of that case goes certainly quite as far as any which denies the implied liability to the Company.

And here the very Act and section which give the directors of the Company power to make calls, provide for a method of enforcing them by sale. The case is not one calling for the devising of a remedy to perfect and enforce the right. All the arguments which would go to infer a remedy by action, from the failure of justice for the want of a remedy, lose their validity when a remedy is provided. The cases cited in *Fort Miller & Fort Edward Pl. R. Co. vs. Payne*, 17 *Barb.* 567, embrace a very full body of decisions on these points. That case itself is of value, as classifying them.

The cases of *Instone vs. Frankfort Bridge Co.* 2 *Bibb*, 576, and *Hartford & New Haven R. R. Co. vs. Kennedy*, 12 *Conn.* 499, are the only ones which have decided that a general liability arises out of the relationship of a stockholder, where the question has directly arisen. In the other authorities there has been an express liability. The case of the *Dexter & Mason Pl. R. Co. vs. Millerd*, 3 *Mich.* 91, I

shall refer to presently. In the case in 2 *Bibb*, there are no authorities referred to, and the reasoning is very brief. The case in 12 *Conn.* does not purport to be based upon authority, but overrules every case on the subject. And the reasoning of that case appears to me exceedingly sophistical. It undertakes to establish the right to a common law action, in the absence of any remedy by sale—which might very well be sustained if there were no other remedy—and then assumes, without argument or authority, that the fact that the law gives an express remedy can make no difference in the right to imply another. Yet the absence of any other is the only sustainable basis of an implied common law action at all. And, after all, it finally basis the right of action in the particular case upon the construction of the charter in question. And it not only confines the right of action to subscriptions, but expressly declines applying the principles beyond the facts reported. (See the last paragraph of the report.) In view of the numerous and well reasoned decisions on this subject in the other States whose courts do not pretend to base their decisions upon the imaginary grounds suggested for them by the Supreme Court of Connecticut, I am constrained to say that this decision is, in my judgment, entitled to very little respect.

Our own Court, in *Dexter & Mason Pl. R. Co. vs. Millerd*, confines its decision to a subscriber under the peculiar wording of the charter. The language of the charter authorizing the directors to "*require payment*," was dwelt upon, as containing the power to sue. This language is not contained in the law under consideration. To my own mind I confess there does not appear any peculiar force in this phrase, but the Court certainly laid great stress upon it. But in that case, the Court construed the charter as authorizing two kinds of notices of calls,—one where a forfeiture was intended to be enforced; and the other where none was desired. This was enough to put the right to sue beyond question, if the Court construed the statute correctly; and

this case comes entirely within the class recognized both in New York and New England, where the terms of the charter as expounded create a right of action. Upon this ground, and applied to subscribers under the Act there expounded, I should feel bound to acquiesce in the decision. But upon the grounds taken by the Court in making it, it can not be made to reach this case. It purports to be governed by the case in Connecticut, and by *Sagory vs. Dubois,* 3 *Sandf. Ch.* 466, and *Small vs. Herkimer Man. Co.* 2 *Comst.* 330. In the latter case, it is not anywhere intimated that an action could have been brought against a stockholder, except on his subscription, which, in that case, contained an express promise " to pay," " at such times and in such proportions as the same shall be required by the directors." And in *Sagory vs. Dubois* the action was given by an express statutory provision.

In the case in 12 *Conn.* much stress was laid on the fact that the charter there allowed a sale for interest, as well as principal, from the time when the assessments were payable. Our statute does not allow interest on the assessment at all; and a sale can not be made for it. No interest runs during the sixty days which must precede a notice of sale, and the sale is merely for the assessment and expenses. This is entirely inconsistent with any right of action; for interest runs from the accruing of such right.

But here there has been a sale of stock, and the action is brought merely for the surplus. And to sustain such an action as this without a statutory authority, not a single case can be found. Even the case in 22 *Conn.* 456 was an action founded on a statute which gave the right of action in express terms for any deficiency arising after sale. In the case in 2 *Bibb,* which sustained the implied assumpsit, it was held that if a sale was made, although as under our law, the surplus was to be refunded to the stockholder, the right of action would not lie for any deficiency, but the whole right to sue at all would be barred by the election to sell.

In *Kennebec & Portland R. R. Co. vs. Kendall*, 31 *Maine*, 470, it was held expressly that no action lay for such deficiency; and the same doctrine is laid down in 31 *Maine*, 573, and 39 *Maine*, 44. In Massachusetts, where, as in Connecticut, an action lies after sale for any deficiency, it is expressly decided in 1 *Gray*, 544, that such an action is in no sense founded on the subscription, but its validity depends entirely on the statute.

Where there is an express and separate subscription, not required by the charter, but distinct from it, there may be good reason for holding that the remedies in the charter are not affected by, and do not in turn affect, the subscription, any more than they would a promissory note. But where the only act done is done under the charter, contains no promise to pay, and has no action given for it by the charter, and the charter contains an express remedy, it would, in my judgment, go beyond any adjudged case to hold that, after exhausting the express remedy, any further course remained; or that any remaining liability exists where the relation of stockholder has been terminated.

*Judgment affirmed.*