### GROSSE ISLE HOTEL COMPANY v. I'ANSON'S EXECUTORS.

1. A subscription to stock whereby the subscriber declares that he takes the number of shares set opposite his name, and agrees to pay all assessments to be made by the board of directors, it being shown that the only assessments the board of directors were authorized to make were calls of the capital stock, imports a promise, not to pay at once for the whole sum subscribed, but to pay such assessments.

2. So, if there is a naked subscription for a certain number of shares, at so much per share, and the statute under which the corporation has been organized empowers the directors to assess the capital stock, the implied promise is to pay such assessments.

Suit on subscription for stock. The transaction was a Michigan transaction. The plaintiff was a corporation organized under the laws of that state, with a capital of $30,000. A statute of Michigan provided, with respect to this sort of companies, that " the capital may be increased, and the number of shares, at any meeting of the stockholders called for that purpose," &c., and that " those holding a majority of the stock, at any meeting of the stockholders, shall be capable of transacting the business of the meeting; and at all meetings of such stockholders, each share shall be entitled to one vote." " Stockholders may appear and vote in person, or by proxy duly filed." The by-laws called for ten days' notice of special meetings to each stockholder, either personally or through the mail, and that three members actually present, representing the majority of the capital stock, should be a quorum for the transaction of business.

The eleventh section of the statute of Michigan declares " that the directors may call in the subscription to the capital stock of such corporation, by instalments, in such portion and at such times and places as they think proper, by giving

notice as the by-laws shall prescribe," &c. In case of non-payment, it gives right to have the stock of delinquent sold.

By the supplement of 1855, it is provided "that any company organized under the act to which this is supplementary, may at any time, by a vote of two-thirds in interest of its stockholders, increase its capital, not to exceed," &c.

Argued at November Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE, VAN SYCKEL and DIXON.

For the plaintiff, *John W. Taylor*.

For the defendants, *Stone & Jackson*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is a suit to recover the residue of the money alleged to be due from the defendant's testator, on a subscription made by him to the capital stock of the plaintiff. The subscription list, with its prefixed agreement, was offered in evidence, and this contract was in these terms: " We, the undersigned, for a valuable consideration, do hereby agree with the Grosse Isle Hotel Company, of Michigan, that we will become subscribers to the capital stock of the said Grosse Isle Hotel Company, and do hereby take the number of shares of said capital stock set opposite our respective names, and agree to pay all charges and assessments regularly levied or assessed by the board of directors, or other proper officers, under the articles of association of the said company, or of the by-laws or regulations now or hereafter to be passed for the government of said company." The testator signed the paper as a subscriber for two hundred and eighty shares, for the price of $7000.

No assessments upon this stock were made by the directors of the company, and the consequence is that the right of action, if any exists, must arise from the implications of the foregoing contract. The position of the counsel of the plaintiff is that the testator, by his stipulation to become a

stockholder and take the number of shares designated by him, thereby, and by necessary intendment, agreed to pay at one time the whole of the price thereof, and that such stipulation is in no wise connected with, or qualified by, the express promise which follows, to pay assessments to be made by the board of directors. But this would be a most unreasonable and strained construction, and it does not appear to be sustained by any authority whatever. At the date of this engagement this company was, and for a considerable period had been, duly organized and in operation, the subscription in question having been projected for the purpose of increasing the capital stock, in order to raise a fund to pay off debts that were then pressing. It would seem, therefore, to be in the highest degree improbable that these new stockholders should be called on, not only to agree to pay to the amount of the designated value of their stock, but also to agree to pay such further amount as the directors, in their discretion, from time to time thereafter, might see fit to exact. The presumption arising from the ordinary principles of human conduct is very strong against such an interpretation, and it would require the presence of very clear terms indeed before we could conclude that it is the true one. But so far from the terms being clear in this sense, they are clear, it is conceived, in the opposite sense. By referring again to the contract, it will appear that the subscribers "agree to pay all charges and assessments regularly levied and assessed by the board of directors," and we then find, when we look at the articles of association and the statutes referred to in them, that the only assessments that the board was authorized to make were assessments upon the capital stock. The express promise, therefore, had no subject to which it could refer except to these calls, and the result inevitably is that the subscribers promised to pay their subscriptions when called upon by the directors, in the exercise of this power. It does not seem to me that there is the least obscurity or uncertainty with respect to this point.

It may be well, however, further to remark that if the

court should have taken the opposite view, such a conclusion would not have availed the defence. By such a construction, the express promise to pay the assessments would have been dissociated from the agreement to subscribe, the two stipulations being regarded as referring to different subjects, and the consequence would be that we would have before us the case of a naked subscription for so many shares of stock, at a certain amount per share. Whether a subscription of this character would give rise, as a matter of law, to an implied promise to pay the designated value of such shares, is a question that has been frequently mooted, and presents a subject on which the authorities are at variance. But, with respect to this particular case, it appears to me that we need not enter this field of contention, inasmuch as we have decisions which should be considered as entirely authoritative, with respect to the rights of these parties, if we regard their contract in the light in which the counsel of the defence would have us accept it. The decisions to which I refer are to be found in the reports of the State of Michigan; and such decisions, I understand, expressly hold that a general subscription to the stock of one of these companies, organized, as the plaintiff has been, under the provisions of the statutes of that state, imports an agreement, not to pay at once the whole sum representing the value of the shares subscribed for, but a stipulation to pay such sum when called for by the directors, in amounts duly assessed. The first of these cases is that of *Dexter and Mason P. R. R. Co.* v. *Millerd*, 3 *Mich.* 91, in which the point was settled that the signing of the articles of association and subscription for stock in a company organizing by force of the legislation similar to that now in question, created a promise on the part of such subscriber to pay the amount of such subscription when called in, although the instrument contained no express promise to that effect. This authority would have enabled the directors of the plaintiff, on the theory that the mode of payment is not specified in the present subscription, to make assessments on the capital stock subscribed for by this defendant, and, on default in payment,

to sue him for the sums so assessed; and such a principle of construction entirely repels the notion that suit can be brought in the absence of an assessment, for the entire sum subscribed, as has been done in the present case. This ruling is reaffirmed, and its grounds further explained, in the case of *Carson* v. *Arctic Mining Company*, 5 *Mich.* 288, the question involved being whether the residue of an assessment remaining after a sale of the stock of a delinquent stockholder, could be collected of him by suit. The facts were: a subscription which did not embrace an express promise to pay assessments duly made; a consequent forfeiture and sale of the stock; and the action to recover the remainder of such assessments, after deducting the price realized on such sale. A recovery was sustained, on the ground that the promise to be implied from the subscription was to the effect that the subscriber would pay the several amounts that should be legally assessed. It is unnecessary to say that such a promise was a negation of an agreement to pay the whole amount of the subscription antecedently to any call by the directors. The court in the case last cited refers, with emphatic approval, to the decision of the Supreme Court of Connecticut in the case of *Hartford and New Haven R. R. Co.* v. *Kennedy*, 12 *Conn.* 499, and in which the same question was raised, with respect to the effect of a general subscription, which was devoid of any promise to pay for the stock. The conclusion reached was that the legal effect of such an act of subscribing was "equivalent to an express promise, on the part of the stockholders, to pay their respective proportions of the capital, when lawfully demanded," in the form of an assessment made by the directors. These adjudications of the Supreme Court of Michigan seem to me to rest on the solid grounds of good sense, and, under the circumstances, should, I think, entirely control the present question.

Viewing, therefore, the instrument of subscription in either of the foregoing aspects, the result upon this suit is the same —that is, that it cannot be sustained. This result renders it unnecessary to consider the other questions presented in the briefs of counsel.

It may be well, however, to remark that, after a careful examination of the subject, I am satisfied that the increase in the capital stock of this company was not legally effected, in accordance with the provisions of the appropriate statute of the State of Michigan, and that, consequently, the subscription in question was void *ab initio*, for want of consideration.

The rule must be made absolute.